**FURGANG & ADWAR, L.L.P.**
Philip Furgang (PF-5654)
Stephanie Furgang Adwar (SA-1711)
CenterRock East
2 Crosfield Avenue
West Nyack, New York 10994
Tel: 845-353-1818



**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
————————————————————————————————X

ROCKLAND EXPOSITION, INC.

<div style="margin-left:2em">Plaintiff,</div>

<div style="margin-left:2em">v.</div>

ALLIANCE OF AUTOMOTIVE SERVICE
PROVIDERS OF NEW JERSEY, TOM ELDER,
THOMAS GRECO, THOMAS GRECO
PUBLISHING, INC. and GLENN VILLACARI

<div style="margin-left:2em">Defendants.</div>

Case No.

**COMPLAINT**

**JURY DEMANDED**

JUDGE KARAS

———————————————————

## COMPLAINT

### The Parties

1.      Plaintiff Rockland Exposition, Inc., was and is a corporation of the State of New

York with a place of business at 388 East Main Street, Middletown, NY 10940 (REI).

2.      Defendant Alliance of Automotive Service Providers of New Jersey is a corporation

of the State of New Jersey having offices at 3633 State Route 33, Post Office Box 734, Neptune,

<div style="text-align:center">-1-</div>

New Jersey 07753 (AASP-NJ).  AASP-NJ is a trade association of collision repair shops principally located in the State of New Jersey.

3.     Defendant Tom Elder (Elder) is an individual with a place of business at Compact Kars, Inc., 3 Trenton Lakewood Road, Clarksburg, New Jersey 08510 and is president of the Board of Directors of AASP-NJ and, in this capacity, is directly responsible for the wrongful acts set forth herein.

4.     Defendant Thomas Greco Publishing, Inc. (TGP) is, upon information and belief, a corporation of the State of New Jersey with a place of business at 244 Chestnut Street, Suite 202, Nutley, NJ 07110.

5.     Defendant Thomas Greco (Greco) is an individual with a place of business at 244 Chestnut Street, Suite 202, Nutley, NJ 07110, is, upon information and belief, president of Defendant TPG and a member of the Board of Directors of AASP-NJ and, in these capacities, is directly responsible for the wrongful acts set forth herein.

6.     Defendant Glenn Villacari (Villacari) is an individual with a place of business at 95 Park Avenue, Nutley, NJ 07110 and is a member of the Board of Directors of AASP-NJ and, in this capacity, is directly responsible for the wrongful acts set forth herein.

## Jurisdictional Statement

7.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1338(a), (b), 17 *U.S.C.* §§ 501-509 and 15 *U.S.C.* §1114, 1116 - 1118, 1121 and 1125(a), and the Court's pendent jurisdiction.

8.     Venue is proper pursuant to 28 U.S.C. §1400 in that Defendants do business in this District and this is an action arising under the Copyright Act of the United States.

## Allegations Relevant To All Claims

9.     Since 1974, Plaintiff REI and its predecessor and related companies have been in the business of running trade shows in such venues as the 100,000 square foot Field House of Rockland Community College, Suffern, New York.  Most of these shows have an automotive theme.

10.     In 1983, REI began, and has continuously thereafter, identified many of its automotive trade shows with the trademark **NORTHEAST**. (Exemplars of flyers for three different shows are attached as **Exhibit A**).

11.     From 1983 to the present REI advertises and provides the **NORTHEAST** RV SHOW annually.

12.     From 1984 to the present REI advertises and provides the **NORTHEAST** RV SHOW'S FALL RV MARKETPLACE annually.

13.     From 1983 through 1993 REI presented the **NORTHEAST** TRUCK SHOW annually.

14.     From 1987 through 1992 REI presented the **NORTHEAST** TOW TRUCK SHOW annually.

15.     From 1991 through 1992 REI presented the CRUZIN THE **NORTHEAST** (a custom car show) annually.

16.     From 1991 through to the present, REI presents **NORTHEAST** REGIONAL AUTOBODY/AUTOMOTIVE TRADE SHOW.

17.     The public has come to identify **NORTHEAST** as synonymous with the services provided by Plaintiff REI.

18.     REI has at all times been the sole and exclusive presenter of these shows and maintains exclusive control of the quality of the services identified by the trademarks **NORTHEAST** for automotive trade shows, including, but not limited to, exclusive control of advertising, engagement of support staff, exhibitor installation, and the like. As with other trade shows, REI invites interested parties to sponsor the events but such sponsors exercise no control over the decisions and conduct of the show.

19.     REI widely advertises and promotes its **NORTHEAST** trade shows. As a consequence, REI's **NORTHEAST** shows (76 to date) have earned a gross amount of over $13,000,000.00 since 1983.

-4-

20.    The common practice of many trade shows, including REI's trade shows, is to have trade association involvement.

**Defendant AASP-NJ Contracts with REI:**

21.    In or about April 1989, REI visited the Auto Congress and Trade Show (ACTS-'89) held at a Sheraton Hotel near the Meadowlands, New Jersey.

22.    ACTS was a trade show exhibiting the wares and vendors of automotive collision repair shops.

23.    Upon information and belief, ACTS was organized and run by Automotive Show's Inc., and the Automotive Service Association of New Jersey ASA-NJ was the sponsor.  ASA-NJ is a predecessor of Defendant AASP-NJ.  (As Defendant AASP-NJ has changed its name several times, to avoid confusion, we will refer to it herein as AASP-NJ, but such reference shall apply to all name permutations.)

24.    By far, the dominant exhibitors were vendors to the collision repair stores because Defendant AASP-NJ was and is known as a repair trade association of collision repair shops in New Jersey.

25.    REI sought and received AASP-NJ's endorsement to run an ACTS show in Suffern, New York in 1990.  AASP-NJ's sponsorship was sought so its members would be encouraged to attend.

26.    Under REI's exclusive direction and control, vendors' accommodations were improved over the prior show in the Meadowlands.   In the 1990 show all vendors were accommodated in the Rockland Community College Field House.  In prior years in ACTS, many vendors were forced to display their wares in a parking garage subject to temporary lighting, poor heat, and wind. Other exhibitors were forced to display in outer hallways near the hotel ballroom.

27.    So limited were facilities before REI ran the ACTS show, it was primarily a "table top" event because there was no room or clearance for full size displays.   Thus, rather than a full-fledged trade show, meant to generate business for the vendors, ACTS was little more than a social gathering for AASP-NJ members (e.g., annual dinner, awards and a  party).

28.    The size of the ACTS '89 event in the Meadowlands in 1989 was 140 booths with 80 vendors and approximately 500-600 actual attendees.

29.    REI, using its superior organizational abilities, advertising, and promotional skills, planned to produce an enlarged event drawing attendees and exhibitors from New York, New Jersey, Connecticut, Pennsylvania and surrounding states to the geographically central location of Suffern, New York.

30.    Based upon REI's success in running its  similar **NORTHEAST** trade shows, AASP-NJ entered a contract with REI that provided that REI would run the show and AASP-NJ would act as sponsor for 1990 (See Contract attached as **Exhibit B**).

31.    REI has and had developed, at significant expense and effort, exhibitor and attendee

mailing lists, including automotive tool and equipment suppliers, from REI'S other automotive

shows ("Lists").   Under the contract with AASP-NJ, REI agreed to use these lists in REI's

promotion of the ACT show provided AASP-NJ agreed that these lists were the exclusive property

of REI.

32.    As part of its services, REI supplies all of its own support equipment (e.g.,

pipe/drape, tables, chairs, carpet, electrical, road signs, registration).  As set forth in the written

contract, REI controlled and controls all phases of its show. REI provided Defendants with detailed

monthly progress reports.

33.    REI directed that AASP-NJ could run the AASP-NJ annual dinner at a nearby hotel

on the same weekend as the **NORTHEAST** REGIONAL AUTOBODY/AUTOMOTIVE TRADE

SHOW trade show, but prohibited AASP-NJ from the conduct of the dinner or any other events

during any of the show operating hours.

34.    REI also directed that it, REI, would (and does) make the final decisions on all

seminar and related speakers AASP-NJ might want to invite to the show to prevent exhibitor

conflicts.

35.    REI and AASP-NJ's contract (**Exhibit B**) was for a one year period for REI's

performance of the two day ACTS show in 1990. The contract provided that AASP-NJ would have

-7-

to decide within 45 days after the 1990 ACTS event if it wanted to renew the contract for the following year.

36.    The Board of Directors of AASP-NJ sent the contract to their attorney for review and then voted 9-1 to accept the contract with REI.

37.    REI was advised that the sole opposing vote was by AASP-NJ's Executive Director because the Executive Director of AASP-NJ had always overseen the entire event and he did not want to give up control to REI. Shortly after entering the contract with REI, AASP-NJ's Executive Director retired.

38.    When REI ran the ACTS show, it substantially increased revenues over the prior years. Booth exhibits increased by over 57%. The number of vendors increased by over 27%. Attendance grew by 40% with an audience drawn from the entire northeast.

39.    With REI running its show with AASP-NJ as a sponsor, the income provided to AASP-NJ doubled from that which was earned from the AASP-NJ ACTS event in 1989.

40.    For the 1991 show, REI increased the length of the show from two to three days.

41.    REI also changed the name of the 1991 show to **NORTHEAST**, so that the show would be identified as one of REI's family of marks and so that the show would have the good will of REI's **NORTHEAST** family of trademarks.

42.    From the 1991 show onward, the show was and is presented under the trademark: **NORTHEAST** REGIONAL AUTOBODY/AUTOMOTIVE TRADE SHOW.

43.    This type of trade show requires a long lead time and requires a large office commitment by Plaintiff REI.

44.    REI advised AASP-NJ that if AASP-NJ wished to continue as sponsor, REI required a two-year automatically renewable contract with a deposit for both the 1991 and 1992 events.

45.    AASP-NJ sent the contract to their lawyer for review and approval and then agreed to the change in the contract terms by signing and returning the contracts with the deposits.

46.    In 1991, REI ran six different **NORTHEAST** shows engaging the facilities of the Rockland Community College Field House in Suffern, New York. These shows were: Cruzin' the **NORTHEAST** Custom Car Show; **NORTHEAST** RV Show; **NORTHEAST RV** Fall Caper; **NORTHEAST** Truck Show; **NORTHEAST**  Tow Truck Show; and the show sponsored by Defendants: **NORTHEAST** Regional Autobody/Automotive Trade Show.

47.    By    implementing    these    changes,    the    **NORTHEAST** REGIONAL AUTOBODY/AUTOMOTIVE TRADE SHOW increased in size over the ACTS show in 1990 by over 17%. The number of vendors increased by more than 13%.

48.    For each show, following the 1991 show, Defendant entered a written contract for a two year period on the same terms. Thus, in 1991, AASP-NJ signed a contract for the years 1992 and 1993 and paid the 1993 deposit.  (1992's deposit was already paid after the 1990 event.)

49.    On information and belief, the amount of money paid to AASP-NJ from its sponsorship in preceding years was principally responsible for making AASP-NJ so financially

strong as to enable it to heavily promote its services to potential membership throughout the State of New Jersey, adding a paid executive director with a car and benefits, hiring lobbyists and establishing a hotline for members.

50.    From 1993 to 1999 REI substantially increased the size of its show. Exhibitors doubled from 80 to 160. Display booths were increased from 140 booth to 442 booths. Attendance increased from 600 to 4,500 attendees, now being drawn from the entire northeastern United States.

51.    In 2002, as a consequence of new environmental laws and consolidation in the automotive repair industry, there were less exhibitors, and attendance dropped off.

52.    In 2004, AASP-NJ once again contracted to be a sponsor for the 2005 and 2006 shows (**Exhibit C**).  This contract continued all of the terms and conditions of the previous contracts, including the automatic renewal clause.

53.    In 2007, Defendants paid their deposit for the 2009 show.

54.    Each year REI provided Defendants with a copy of REI's exhibitor lists on a confidential basis so that AASP-NJ could sell advertising space for an issue of AASP-NJ's in-house magazine to be distributed at the show.

55.    The contracts between REI and Defendants recites that these lists are the exclusive property of REI. (**Exhibit C** at p.1, ¶5).

-10-

56.    REI ran its 2008 **NORTHEAST REGIONAL** AUTOBODY/AUTOMOTIVE

TRADE SHOW and AASP-NJ was the sponsor.

**Defendant's Wrongful Conduct**

57.    On March 18, 2008, one week before the move-in for the 2008 event in Suffern,

New York, REI received a telephone call from Defendant Villacari.  Defendant Villacari advised

REI that AASP-NJ had decided to go "in a different direction for 2009."

58.    The oral advice was a direct breach of the terms of the contract between REI and

Defendants.

59.    On March 20, 2008, Defendants e-mailed a request for attendee badges for the sales

and management staff of a competitor, the Meadowlands Expo Center.

60.    REI objected and refused because the Meadowlands Expo Center staff are

competitors and this was an obvious attempt to solicit the vendors and exhibitors at the 2008 event

and reminded AASP-NJ that there was a  no solicitation policy in place, and that this  policy

extended to the Meadowlands' staff.

61.    On March 25, 2008, set-up day for the Suffern **NORTHEAST REGIONAL**

AUTOBODY/AUTOMOTIVE TRADE SHOW  show, REI faxed Defendant AASP-NJ a request

for written confirmation of Defendants' decision that Defendants did not wish to participate or

sponsor the **NORTHEAST REGIONAL** AUTOBODY/AUTOMOTIVE TRADE SHOW in 2009

(**Exhibit D**).

62.     REI advised AASP-NJ that it will be running the 2009 event in Suffern for the tentative dates in March, 2009, and that AASP-NJ had paid its deposit to participate in that event.

63.     On March 26, 2008,  AASP-NJ mailed out a press release to REI's confidential exhibitor list and then e-mailed REI's confidential exhibitor list, announcing that it was "moving its event" to the Meadowlands for 2009 (Press release and e-mail attached hereto as **Exhibit D**) thereby breaching the contract (**Exhibit E**).

64.     Most members of Defendants' AASP-NJ Trade Show Committee, including Committee Members who were trade show exhibitors, denied any knowledge or notice of this change and were only advised when they received the press release.

65.     On March 27, 2008, (large vendor equipment move-in day for the 2008 **NORTHEAST REGIONAL** AUTOBODY/AUTOMOTIVE TRADE SHOW) REI received a letter from AASP-NJ, by its attorney, threatening REI not to "interfere" with AASP-NJ's 2009 event and unilaterally advising REI that AASP-NJ's contract with REI has ended  (**Exhibit F**).

66.     On March 28, 2008, the first day of 2008 event, confusion begins as the exhibitors ask REI why it was moving its show to the Meadowlands.

67.     AASP-NJ and the staff from the Meadowlands solicited exhibitors at the Exhibitor's Headquarters at the hotel the evening following the first day of the show. AASP-NJ's conference journal include a full page four-color advertisement for the Meadowlands in 2009 using the

-12-

infringing NORTHEAST trademark. AASP-NJ's journal lists April 3-5, 2009, as the dates of its infringing 2009 show.

68.    The contract further provides that AASP-NJ shall not be involved in, or endorse, any other related expositions four months prior or four months subsequent to the latest contracted exposition. (See **Exhibit C** at p.3, ¶1 ) The latest contracted exposition is the 2009 show for which AASP-NJ paid its deposit. Therefore, this limitation applied to the four months prior and subsequent to the 2009 show. In other words, Defendants were prohibited by the contract from engaging in these activities until the end of July, 2009. However, Defendants breached this agreement by getting involved in and endorsing the 2009 show at the Meadowlands prior to and subsequent to the *2008* show.

69.    REI's 2009 show is scheduled for March 20-22, 2009.

70.    Meadowlands' staff advised exhibitors at the 2008 show, that the AASP-NJ show will be March 20-22, 2009, wilfully causing further confusion.

71.    On March 29, 2008, the second day of the **NORTHEAST REGIONAL AUTOBODY/AUTOMOTIVE TRADE SHOW**, Meadowlands' staff attended the show and visited exhibitors individually with AASP-NJ with Defendants Villacari and Elder. Despite REI's demands that such solicitation cease, Defendants and Meadowlands' staff walked the exhibit floor soliciting for the Meadowlands event.

-13-

72.     Defendants, upon information and belief, intentionally led exhibitors to the false conclusion that REI was going to be involved with the Meadowland's show. Upon information and belief, Defendants purposefully mislead exhibitors into believing that REI was still involved in order to palm off the AASP-NJ event as that of REI.

73.     REI gave Defendant Villacari a copy of the REI report page showing that Defendant AASP-NJ had paid its deposit for the **NORTHEAST REGIONAL** AUTOBODY/AUTOMOTIVE TRADE SHOW in 2009 and, therefore, was contractually bound to sponsor REI's **NORTHEAST** REGIONAL AUTOBODY/AUTOMOTIVE TRADE SHOW 2009.

74.     Defendant Villacari admitted that Defendant AASP-NJ was bound and stated that "it was too late."

75.     On March 30, 2008, the last day of the show, the larger exhibitors told REI that they did not want to move to the Meadowlands because of the cost.

76.     Under the contract (**Exhibit C** at p.2, ¶6), termination of the contractual relations between Defendant AASP-NJ and REI requires notification within 45 days of the end of the prior years show and does not take effect until after the next contracted show. The notice of attempted termination was not sent in mid-April, 2007, as required under the contract to terminate the 2009 show. Instead, Defendant AASP-NJ paid the deposit for the 2009 show, indicating AASP-NJ's acceptance of the contract to continue to run the 2009 show. An attempted termination was not made until after the deposit was paid and REI had made a commitment for the 2009 show.

-14-

77.    REI maintains an exhibitor prospect mailing list.  Defendants have not been authorized and have been improperly using  REI's "significant exhibitor prospect mailing list" which they agreed under the contract is the exclusive property of  REI .  (**Exhibit C** at p.1 ¶5)

78.    On or about the end of March, 2008, Defendants infringed upon Plaintiff's trademark **NORTHEAST** in advertising and in press releases to identify its competing 2009 trade show.

79.    REI's exhibitors  expressed confusion over the competing trade shows.

80.    Defendants have knowingly and purposefully diverted significant business from REI by infringing REI's **NORTHEAST** trademark and by palming off their show as that of REI by use of REI's **NORTHEAST** trademark as its own and by the improper use of REI's trade secret protected exhibitor prospect mailing list.

81.    To date, at least one exhibitor has cancelled its contract with REI and asked for a refund so that it can exhibit in Defendants' show and two other exhibitors have expressed that they were likely to cancel their contracts, as well.   No large exhibitors (i.e., those taking large display booths) have signed with either show arising out of the confusion caused by Defendants' wrongful acts.

82.    Over the years, REI created many original advertising brochures.  On or about the end of April, 2008, Defendants began to copy and distribute advertising materials which improperly incorporates identical copies of the text and layout of significant portions of three of

-15-

Plaintiff's copyrighted brochures. (See Plaintiff's Brochures attached as **Exhibits G, H,** and **I,** and Defendants' infringing advertising materials attached as **Exhibit J.**)

83.     Defendants have and are distributing a series of press releases and articles to the public falsely claiming ownership of the **NORTHEAST** trademark, claiming to have used the **NORTHEAST** trademark for 32 years, and claiming to have brought suit against REI for running a competing trade show, for trademark infringement of REI's own **NORTHEAST** trademark, and for improperly using confidential information.

84.     On information and belief, Defendants ran a press release in CollisionWeek falsely presented as a reported article. (**Exhibit K**) This press release was run in the form of an interview with AASP-NJ President, Defendant Elder, on April 21, 2008. In this "interview," Defendants falsely allege:

a.      That it was the Defendants who had begun to look for new space when they outgrew the Sheraton at the Meadowlands. As set forth above, it was REI which approached Defendants to offer its services to run a more successful show. Defendants' statement was made with knowledge of its falsity, and with reckless disregard for the truth, in a calculated effort to diminish the value of REI's services in the eyes of the trade and the public.

b.      That AASP-NJ was responsible, through its persistence, for the growth of the show. In fact, AASP-NJ, upon contracting with REI to run the trade show, allowed REI

-16-

to do everything and REI is the party that was responsible for the growth of the show. This false statement was made in an effort to make Plaintiff REI appear to be less qualified, and less responsible for the success of the trade show. Defendants' statements were made with knowledge of their falsity and with reckless disregard for the truth, in a calculated effort to diminish the value of REI's services in the eyes of the trade and the public.

c.   That in the first year that REI ran the trade show, it was only moderately more successful than in the previous year when Defendants had Automotive Show, Inc. run the trade show. In order to send this point home, Defendants allege that there were merely "about 10 more vendors" that year and that Defendants were concerned. In fact, in the first year of REI running the show, the number of vendors increased from 80 to 102, an increase of 22 vendors and a 27% increase. The number of sold booths went from 140 to 220, an increase of 80 booths or a 57% increase. And, attendance rose by 40% and drew an audience from the entire northeast. Most importantly, AASP-NJ doubled the money it received from the 1989 event. Due to these improvements, Defendants were not concerned at all, they were, instead, elated by REI's performance. Defendants' statement was made with knowledge of its falsity and with reckless disregard for the truth, in a calculated effort to diminish the value of REI's services in the eyes of the trade and the public.

d.   That AASP-NJ requested REI to provide a new marketing strategy and, when REI was only able to come up with "some minor changes," and only in the "same venue with the same approach," this proved "unacceptable to AASP-NJ and to [its] vendors." In fact, Defendants only requested that REI figure out how to drop its printing and postage costs by $25,000. REI presented ways to decrease this fee, but could not possibly cut it by the requested amount. Additionally, at the very meeting where REI presented its ideas, Defendants paid REI the deposit for the 2009 show, contractually committing AASP-NJ to the 2009 show. Defendants' statements were made with knowledge of their falsity and with reckless disregard for the truth, in a calculated effort to diminish the value of REI's services in the eyes of the trade and the public.

e.   That "AASP-NJ's NORTHEAST Automotive Trade Show is the only show with a 32-year history of strong industry sponsorship and support." And that "AASP-NJ has been giving back to the industry through the NORTHEAST show for 32 years." As set forth above, when REI began to run the trade show, 19 years ago, it was named ACTS '89. REI was responsible for changing the name so as to benefit from REI's **NORTHEAST** family of marks. **NORTHEAST** was only used since 1991, 18 years, not 32 years, and it was never used by AASP-NJ in any way, to identify itself or its services. Defendants' statements were made with knowledge of their

falsity and with reckless disregard for the truth, in a calculated effort to diminish the value of REI's services in the eyes of the trade and the public.

85.    Also, in that April 21, 2008, press release (**Exhibit K**), Defendants confirm that Defendant TGP is knowingly promoting the infringing use of **NORTHEAST** in its publications.

86.    On information and belief, another press release made to appear as a reported article, was published in CollisionWeek on May 27, 2008 (attached hereto as **Exhibit L**) This press release refers to Defendant AASP-NJ's "new web presence." Defendants falsely state in this article that "[T]his forward-thinking type of site is what AASP-NJ has been attempting to get from our show producers for the last decade. Although it took some serious changes to get to where we wanted to go, I think one look at the website justifies everything." In fact, Defendants never asked anything of the sort from REI, and simply and happily collected the money that REI earned in its successful shows. Defendants could have instituted its own website at any time, but never did. REI's services were solely to run a trade show, not run AASP-NJ's business or website. Defendants' statements were made with knowledge of their falsity and with reckless disregard for the truth, in a calculated effort to diminish the value of REI's services in the eyes of the trade and the public.

87.    On information and belief, a press release made to appear as a reported article, was published in CollisionWeek, on June 27, 2008 (attached hereto as **Exhibit M**). In that press release, Defendants represent again that "AASP-NJ has been sponsoring the NORTHEAST show

for over 30 years." As set forth above, **NORTHEAST** was first used in 1991, eighteen years ago,

and **NORTHEAST** was never used by AASP-NJ as a trademark in any way. **NORTHEAST** is a

part of REI's family of **NORTHEAST** trademarks. Defendants' statements were made with

knowledge of their falsity and with reckless disregard for the truth, in a calculated effort to

diminish the value of REI's services in the eyes of the trade and the public.

88.    Defendants admit that **NORTHEAST** is a trademark. In AASP-NJ's letter of March

27, 2008, Defendant AASP-NJ accused Plaintiff REI that REI's use of **NORTHEAST** is

"misleading" and "confusing" (**Exhibit F**).

89.    On March 31, 2008, Defendant AASP-NJ wrote another letter, by its attorney,

repeating the same accusations (**Exhibit N**).

90.    On May 20, 2008, Defendant AASP-NJ wrote Plaintiff once again demanding that

Plaintiff cease using Plaintiff's Northeast Regional 2009 Trade Show."

91.    On June 9, 2008, Plaintiff, by its counsel, wrote to Defendants advising, among

other claims that Defendants were (a) infringing upon its copyright in advertising; (b) infringing

upon Plaintiff REI's trademark rights in **NORTHEAST**, (c) breached its contract with Plaintiff,

and (d) are unlawfully using REI's trade secrets.

92.    REI also gave notice to Defendants that it was going to start a law suit against them.

Specifically, REI stated:

> Unless we receive word, in writing, from AASP-NJ within two (2) weeks of the
> date of this e-mailed, confirmation by certified mail, return receipt requested, letter,

acknowledging that all commercial activities with regard to AASP-NJ's and its Board Members' use of NORTHEAST and our clients' copyrighted works has been halted, and that we shall be immediately provided with a full accounting, *we will be forced to take further legal action to insure that our client's exclusive rights and contracts are respected. In commencing this action, we will seek, among other causes of action, trademark infringement, copyright infringement, theft of trade secrets, tortious interference with contractual relations, tortious interference with business relations, and breach of contract. The action shall be commenced in the United States District Court for the Southern District of New York. At that time we will make an application for a temporary restraining order. We expect to commence this action in or about July 7, 2008, in the United States Courthouse at 300 Quarropas Street, White Plains, New York 10601-4150* . As this date approaches, we will advise you of the specific date and time we plan to approach the court. *AASP, AASP-NJ, and its Board of Directors are further cautioned that any attempt to commence an action in another jurisdiction is considered forum shopping for which additional relief shall be sought.* (emphasis added) (**Exhibit O**)

93.    On June 25, 2008, Defendant AASP-NJ, by its attorney, wrote REI stating that it had just received Plaintiff's letter of June 9, 2008, and required a few days to address this letter. (**Exhibit P**)

94.    Instead, Defendants falsely mislead Plaintiff and then filed a "strike suit" by commencing an action the very next day in the United States District of New Jersey, thereby forum shopping, even though they were cautioned not to do so.

95.    Defendant AASP-NJ's forum shopping strike suit comprises a 14 page complaint against Plaintiff and its president which, on information and belief, had been in long preparation. (**Exhibit Q**).

96.    Then, on June 27, 2008, *after* Defendants filed their complaint (**Exhibit Q**), Defendant sent a letter, by its attorney, purporting to respond to Plaintiff's letter of June 9, 2008,

and demanding that Plaintiff refund AASP-NJ's deposit (thereby admitting its breach of contract), and making the outrageous demand that REI turn over REI's proprietary lists of exhibitors and attendees, lists which Defendants have contractually admitted belong to REI. (**Exhibit R**)

97.    Plaintiff, promptly upon learning of the copyright infringements by Defendants, located the original works and filed, on a Special Handling basis, applications for Copyright Registration of its works so that it could commence this action.

98.    Upon applying for these registrations, Plaintiff promptly authorized the preparation of this action.

### COUNT ONE
### (*Copyright Infringement*)

99.    This Count arises out of the occurrences as set forth hereinabove and hereinafter and is directly related to the counts for copyright infringement under 17 U.S.C. §101, et seq.

100.    Plaintiff repeats and realleges the allegations of ¶¶ 1 through 99 as if set forth herein.

101.    Plaintiff is the owner of all right, title and interest in the copyright of the advertising brochure ("Brochure 1" - **Exhibit G**) identified on Certificate of Copyright Registration No. VA 1-635-656. ( **Exhibit S**)

102.    Defendants have knowingly and willfully violated Plaintiff's copyright by continuing to copy and distribute their infringing advertising (i.e., their Work) without license or authority to do so.

-22-

103.    By reason of Defendants' past infringement and continued infringement Plaintiff has sustained and will continue to sustain substantial injury, loss and damages to its ownership rights in Brochure 1.

104.    Defendants have been copying,  distributing and otherwise using their Work to market its trade show and  have thereby been engaging in unfair trade practices and unfair competition against Plaintiff causing Plaintiff irreparable injury.

105.    Unless Defendants are restrained from further copying, reproducing, and using Brochure 1and enjoined to remove and destroy any infringing copies taken from Brochure 1, Defendants shall continue to cause injury to the business reputation of Plaintiff by said infringement of Plaintiff's copyright and by Defendants unfairly competing with Plaintiff

106.    Plaintiff has suffered irreparable harm and there is no adequate remedy at law for the future injuries and damage as a result of the Defendants' copyright infringements and Plaintiff is suffering monetary damages in an amount not thus far determined. The aforesaid acts of Defendant have been and are likely to cause damage to Plaintiff in an amount not presently known but believed to be in excess of five thousand dollars ($5,000.00).

## COUNT TWO
### (*Copyright Infringement*)

107.    This Count arises out of the occurrences as set forth hereinabove and hereinafter and is directly related to the counts for copyright infringement under 17 U.S.C. §101, et seq.

108.    Plaintiff repeats and realleges the allegations of ¶¶ 1 through 107 as if set forth herein.

109.    Plaintiff is the owner of all right, title and interest in the copyright of the advertising brochure ("Brochure 2" - **Exhibit H**) identified on Certificate of Copyright Registration No. VA 1-635-674. (**Exhibit T**)

110.    Defendants have knowingly and willfully violated Plaintiff's copyright by continuing to copy and distribute Brochure 2 without license or authority to do so.

111.    By reason of Defendants' past infringement and continued infringement Plaintiff has sustained and will continue to sustain substantial injury, loss and damages to its ownership rights in Brochure 2.

112.    Defendants have been copying, distributing and otherwise using their Work to market its trade show and have thereby been engaging in unfair trade practices and unfair competition against Plaintiff causing Plaintiff irreparable injury.

113.    Unless Defendants are restrained from further copying, reproducing, and using Brochure 1and enjoined to remove and destroy any infringing copies taken from Brochure 2, Defendants shall continue to cause injury to the business reputation of Plaintiff by said infringement of Plaintiff's copyright and by Defendants unfairly competing with Plaintiff

114.    Plaintiff has suffered irreparable harm and there is no adequate remedy at law for the future injuries and damage as a result of the Defendants' copyright infringements and Plaintiff

-24-

is suffering monetary damages in an amount not thus far determined. The aforesaid acts of

Defendant have been and are likely to cause damage to Plaintiff in an amount not presently known

but believed to be in excess of five thousand dollars ($5,000.00).

## COUNT THREE
### (Copyright Infringement)

115.    This Count arises out of the occurrences as set forth hereinabove and hereinafter and

is directly related to the counts for copyright infringement under 17 U.S.C. § 101, et seq.

116.    Plaintiff repeats and realleges the allegations of ¶¶ 1 through 115 as if set forth

herein.

117.    Plaintiff is the owner of all right, title and interest in the copyright of the advertising

brochure ("Brochure 3" - **Exhibit I**) identified on Certificate of Copyright Registration No. VA

1-635-638. (**Exhibit U**)

118.    Defendants have knowingly and willfully violated Plaintiff's copyright by continuing

to copy and distribute the Work without license or authority to do so.

119.    By reason of Defendants' past infringement and continued infringement Plaintiff has

sustained and will continue to sustain substantial injury, loss and damages to its ownership rights

in the Work.

120.    Defendants have been copying,  distributing and otherwise using Brochure 3 to

market its trade show and  have thereby been engaging in unfair trade practices and unfair

competition against Plaintiff causing Plaintiff irreparable injury.

121.    Unless Defendants are restrained from further copying, reproducing, and using

Brochure 3, and enjoined to remove and destroy any infringing copies taken from Brochure 3,

Defendants shall continue to cause injury to the business reputation of Plaintiff by said infringement

of Plaintiff's copyright and by Defendants unfairly competing with Plaintiff

122.    Plaintiff has suffered irreparable harm and there is no adequate remedy at law for

the future injuries and damage as a result of the Defendants' copyright infringements and Plaintiff

is suffering monetary damages in an amount not thus far determined. The aforesaid acts of

Defendant have been and are likely to cause damage to Plaintiff in an amount not presently known

but believed to be in excess of five thousand dollars ($5,000.00).

## COUNT FOUR
### (Federal Trademark Infringement)

123.    This is a count for trademark infringement and arises under the trademark laws of

the United States (the Lanham Act) 15 U.S.C. §§ 1125, 1116, 1117, and 1121.

124.    Plaintiff repeats and realleges the allegations of ¶¶ 1 through 123 as if set forth

herein.

125.    The use by Defendants of the **NORTHEAST** trademark is likely to cause confusion

as to the source of the services as to Plaintiff's family of **NORTHEAST** trademarks to identify

automotive trade shows.

126.    The use by Defendants of the **NORTHEAST** trademark in connection with trade shows is a deliberate act of infringement intended to trade on the reputation and the goodwill of Plaintiff in its long standing use of its family of **NORTHEAST** trademarks.

127.    The use by Defendants of **NORTHEAST** deprives Plaintiff of control of its reputation and its good will in its family of **NORTHEAST** trademarks.

128.    The use by Defendants of the **NORTHEAST** trademark, as set forth herein, was intended to and did:

a)      cause likelihood of confusion or misunderstanding among vendors, prospective vendors, and members of the relevant trade as to the sponsorship or approval by Plaintiff of the services of Defendant AASP-NJ;

b)      cause likelihood of confusion or misunderstanding among vendors, prospective vendors, and members of the relevant trade as to Defendant AASP-NJ's affiliation, connection, or association with Plaintiff;

c)      represent to vendors, prospective vendors, and members of the relevant trade that Plaintiff's services were the services of Defendant AASP-NJ or vice versa; and

129.    Defendants' foregoing actions have been knowing, deliberate, willful, and in disregard of Plaintiff's rights.

130.    Plaintiff is damaged by the complained of conduct of Defendants in an amount to be determined.

-27-

131.    Plaintiff has no adequate remedy at law.

132.    Plaintiff is entitled to an award of actual damages, exemplary damages, and attorneys' fees for these wilful acts.

133.    The said conduct of Defendants has caused, and if not enjoined, will continue to cause irreparable damage to the rights of Plaintiff in its business reputation and good will, in an amount not presently known but believed to be in excess of three million dollars ($3,000,000.00)

## COUNT FIVE
### (Breach of Contract)

134.    This is a count for breach of contract and arises out of the contractual relationship between Plaintiff and Defendant AASP-NJ and arises out of the allegations set forth above in connection with Counts One through Four.

135.    Plaintiff repeats and realleges the allegations of ¶¶ 1 through 134 as if set forth herein.

136.    As set forth above, Plaintiff and Defendant AASP-NJ are bound by a contract.

137.    Defendants have materially breached the contract in several ways including, but not limited to:

    a.    paying the deposit on the 2009 show and then improperly attempting to terminate the contract;

    b.    endorsing and being involved in a competing show four months before and four months after the 2008 show; and

c.　　utilizing Plaintiff REI's proprietary customer list without authorization.

138.　Defendants have breached their contract with Plaintiff by failing to perform the contract as aforesaid and have damaged the plaintiffs in an amount not presently known but believed to be in excess of two hundred thousand dollars ($200,000.00).

## COUNT SIX
### *(Tortious Interference with Prospective Business Advantage)*

139.　This is a claim for relief from Defendants' tortious interference with prospective business advantages and arises from those acts alleged in support of Counts One through Five.

140.　Plaintiff repeats and realleges the allegations of ¶¶ 1 through 139 as if set forth herein.

141.　At all times herein relevant, Defendants have been aware or reasonably should have been aware that Plaintiff owned the **NORTHEAST** family of trademarks used by Plaintiff in connection with its trade show services.

142.　At all times herein relevant, Defendants have been aware or reasonably should have been aware that Plaintiff intended to run an autobody/automotive trade show in 2009.

143.　On information and belief, Defendants entered upon the premises of Rockland Community College Field House with employees and agents of the Meadowlands Exposition Center during the 2008 **NORTHEAST** Autobody/Automotive Trade Show and intentionally and willfully solicited and endorsed a competing 2009 autobody and automotive trade show so as to interfere with Plaintiff's ability to engage in its business.

-29-

144.    Plaintiff has been injured in its business as a direct and proximate result of the aforesaid unlawful activities by Defendants in an amount not presently known but believed to be in excess of three million dollars ($3,000,000.00)

145.    On information and belief, Defendants have been guilty of oppression, fraud, and malice in doing the aforementioned unlawful acts.

146.    Plaintiff has no adequate remedy at law.

147.    The said conduct of Defendants has caused, and if not enjoined, will continue to cause irreparable damage to the rights of Plaintiff in its business reputation and good will.

148.    Plaintiff is entitled to exemplary damages in an amount in excess of three million dollars ($3,000,000.00) and the award of attorneys' fees.

## COUNT SEVEN
### (Tortious Interference with Contracts)

149.    This is a claim for relief from Defendants' tortious interference with contracts arising out of the same facts as alleged in connection with the acts of trademark and copyright infringement and arises out of the same facts as alleged in connection with Counts One through Six.

150.    Plaintiff repeats and realleges the allegations of ¶¶ 1 through 149 as if set forth herein.

151.    Plaintiff has contracts in place with vendors and exhibitors to participate in Plaintiff REI's 2009 **NORTHEAST** Regional Autobody/Automotive Trade Show.

-30-

152.    Upon information and belief, Defendants are aware of Plaintiff's contracts with its vendors and exhibitors.

153.    Upon information and belief, Defendants have been intentionally procuring the breach of contracts by these vendors and exhibitors and, in fact, at least one exhibitor has already breached its contract with Plaintiff in order to contract with Defendants.

154.    Plaintiff has been injured in its  business as a direct and proximate result of the aforesaid unlawful activities by Defendants in an amount in an amount not presently known but believed to be in excess of two hundred and fifty thousand dollars ($250,000.00).

155.    On information and belief, Defendants have been guilty of oppression, fraud, and malice in doing the aforementioned unlawful acts.

156.    Plaintiff has no adequate remedy at law.

157.    The said conduct of Defendants has caused, and if not enjoined, will continue to cause irreparable damage to the rights of Plaintiff  in its business reputation and good will.

158.    Plaintiff is entitled to exemplary damages in an amount in excess of two hundred and fifty thousand dollars ($250,000.00) and the award of attorneys' fees.

## COUNT EIGHT
### *(False and Deceptive Advertising, Trade Libel, and Disparagement Under the Lanham Act)*

159.    This is a claim for false and deceptive advertising, fraud, trade libel, defamation and trade disparagement of Plaintiff and the services of Plaintiff REI. and arises under the Trademark Laws of the United States (the Lanham Act) 15 U.S.C. §§ 1125, 1116, 1117, and 1121.

-31-

160.    Plaintiff repeats and realleges the allegations of ¶¶ 1 through 159 as if set forth herein.

161.    Plaintiff REI provides its trade show services to the autobody and automotive industry.

162.    Commencing in or about March, 2008, Defendants began making oral representations to Plaintiff's vendors and exhibitors (Plaintiff's customers) that Defendants would be operating a trade show at the Meadowlands Exposition Center in 2009.

163.    From March, 2008 until present, Defendants have falsely claimed ownership of the trademark **NORTHEAST**.  Defendants are maliciously and falsely representing that Plaintiff is infringing the **NORTHEAST** trademark and maliciously representing that Plaintiff has no right to operate a trade show to the autobody and automotive community.  Further, Defendants are falsely representing and advertising that it has used the **NORTHEAST** trademark for 32 years.

164.    These statements are at all times, including the time when published, false, untrue, and defamatory and known to be such by Defendants.

165.    Defendants made and published the statements with malice and willfully intended that the statements injure Plaintiff.

166.    Defendants have damaged Plaintiff in an amount in an amount not presently known but believed to be in excess of three million dollars ($3,000,000.00).

167.    Plaintiff has no adequate remedy at law.

168.    Unless restrained and compelled to publish corrective print advertisements, Defendants will continue to cause injury to the business reputation of Plaintiff by publishing substantially similar print advertisements and press releases.

169.    Plaintiff is entitled to exemplary damages in an amount in excess of three million dollars ($3,000,000.00) Dollars.

## COUNT NINE
### (Common Law Trade Libel)

170.    This Count arises under common law trade libel and arises out of the same acts and conduct alleged herein.

171.    Plaintiff repeats and realleges the allegations of ¶¶ 1 through 170 as if set forth herein.

172.    Defendants intentionally and willfully published false and defamatory statements concerning Plaintiff to third parties.

173.    The statements are and were at all times, including the time when published, false, untrue, and defamatory and known to be such by Defendants.

174.    Defendants made and published the statements with malice and willful intent to injure Plaintiffs.

175.    Defendants' acts and conduct, without Plaintiff's consent, have damaged Plaintiff and Plaintiff has been irreparably injured in its business and in its good name and character. Plaintiff's standing in its businesses has been seriously impaired.

176.   Plaintiff has no adequate remedy at law.

177.   Defendants' unlawful and improper acts and conduct have damaged Plaintiff in a in an amount not presently known but believed to be in excess of sum not presently known but reasonably believed to be in excess of three million dollars ($3,000,000.00).

178.   Unless restrained, Defendants will continue to cause injury to Plaintiff's trademark and to Plaintiff's business reputation and standing.

179.   Plaintiff is entitled to attorneys' fees, treble damages of all profits earned by Defendants  and exemplary damages in excess of three million dollars ($3,000,000.00)

## COUNT TEN
*(State Unfair Competition, Trademark Infringement, Dilution, and Palming Off)*

180.   This is a counterclaim for relief arising under the Trademark Laws of the State of New York and, more particularly, New York General Business Law, Article 24, and arises out of of the same acts and conduct alleged in Counts One through Nine and is subject to the and the Court's pendent jurisdiction.

181.   Plaintiff repeats and realleges the allegations of ¶¶ 1 through 180 as if set forth herein.

182.   Over twenty-five years after Plaintiff had been using its **NORTHEAST** trademark, Defendants appropriated the identical trademark applied to trade shows, thereby palming off Defendants' services as the services of Plaintiff and/or vice versa.

-34-

183.    Defendants, in the course of adopting and using Plaintiff's trademark **NORTHEAST** has intended by the aforesaid acts to:

a)    cause likelihood of confusion or misunderstanding among vendors, prospective vendors, and members of the relevant trade as to the approval by Plaintiff of the work and services of Defendant AASP-NJ;

b)    cause likelihood of confusion or misunderstanding among vendors, prospective vendors, and members of the relevant trade as to Defendant AASP-NJ's affiliation, connection, or association with Plaintiff;

c)    represent to vendors, prospective vendors, and members of the relevant trade that Plaintiff's services were the services of Defendant AASP-NJ or vice versa;

184.    Additionally, Defendants, without the consent of Plaintiff, have falsely represented that Plaintiff's trademark **NORTHEAST** is Defendant AASP-NJ's trademark, and such use is likely to cause confusion, mistake, or deceive as to the source or origin of Plaintiff's services and/or dilute Plaintiff's trademark.

185.    Plaintiff has no adequate remedy at law.  The said conduct of Defendants has caused, and if not enjoined, will continue to cause irreparable damage to the rights of Plaintiff in its business reputation and good will, in an amount not presently known but believed to be in excess of three million dollars ($3,000,000.00)

-35-

## COUNT ELEVEN
### (*Misappropriation of Trade Secrets*)

186.    This is a claim for relief for theft of trade secrets and arises under common law of the State of New York and out of the same acts and conduct alleged in Counts One through Ten.

187.    Plaintiffs repeat and reallege each and every allegation contained in ¶ 1 through ¶186 as though fully set forth herein.

188.    Plaintiff provided Defendants with Plaintiff's lists of exhibitors and vendors which Defendants contractual admit is the exclusive property of Plaintiff.

189.    Plaintiff derives economic value from its proprietary confidential and other trade secret information (trade secrets) because such trade secrets are generally not known to the public, not readily ascertainable, and of significant value to the operation of Plaintiffs.

190.    Plaintiff has taken and does take steps to maintain the secrecy of its trade secrets, including, but not limited to, limiting access to confidential information and advising Defendants and obtaining their contractual agreement that, in particular, its lists are confidential and proprietary.

191.    The trade secrets herein were only disclosed Defendants and others who had a need to know and only to the extent of such need to know in order that they could carry out the performance of the contract between the parties.

192.    Defendants have misappropriated Plaintiff's trade secrets by using and disclosing the trade secrets to others without a right to do so, all in breach of the confidences reposed in

Defendants by Plaintiff and the contract between Plaintiff and Defendant AASP-NJ in the Defendants' disclosing of the trade secrets in breach of the written agreements between Plaintiff and Defendants to respect the exclusive nature of the lists.

193.   As a result of Defendants' trade secret misappropriation, Plaintiff has been injured in its business.

194.   Plaintiff has suffered irreparable harm and there is no adequate remedy at law.

195.   Plaintiff has and will continue to suffer irreparable harm and damage as a result of Defendants' acts and Plaintiff has also suffered monetary damages in an amount not thus far determined. The aforesaid acts of Defendants have and will damage Plaintiff in an amount not presently known but believed to be in excess of six hundred and thirty thousand dollars ($630,000.00).

196.   Unless restrained, Defendants will continue to cause to cause injury to the business of Plaintiff by continuing to use and to disclose and make available to third parties, including competitors of Plaintiff.

197.   Plaintiff is entitled to the award of attorneys' fees and exemplary damages in excess of six hundred and thirty thousand dollars ($630,000.00).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Rockland Exposition, Inc., demands judgment against Defendants Alliance of Automotive Service Providers of New Jersey, Tom Elder, Thomas Greco, Thomas Greco Publishing, Inc. and Glenn Villacari (jointly and severally) as follows:

(1)    That Defendants, their agents and employees, and all other persons or entities within their respective control or supervision, and all other persons or entities acting in concert or participation with them, be enjoined during the pendency of this action and permanently from using, copying, or otherwise exploiting Plaintiffs' copyright and copyrighted work;

(2)    That Defendants, their agents and employees, and all other persons or entities within their respective control or supervision, and all other persons or entities acting in concert or participation with them, be enjoined during the pendency of this action and permanently from using, disclosing, converting, appropriating, retaining, selling, transferring, or copying any property, confidential information, or trade secrets of Plaintiffs;

(3)    That Defendants, their agents and employees, and all other persons or entities within their respective control or supervision, and all other persons or entities acting in concert or participation with them, be enjoined during the pendency of this action and permanently from using, copying, or otherwise gaining access to and/or exploiting Plaintiff's lists of vendors and exhibitors;

(4)     That Defendants, their agents and employees, and all other persons or entities within their respective control or supervision, and all other persons or entities acting in concert or participation with them, be enjoined during the pendency of this action and permanently from infringing upon Plaintiff's family of NORTHEAST trademarks by using **NORTHEAST REGIONAL AUTOBODY/AUTOMOTIVE TRADE SHOW** or any other term confusing similar to NORTHEAST.

(5)     That Defendants, their agents and employees, and all other persons or entities within their respective control or supervision, and all other persons or entities acting in concert or participation with them, be enjoined during the pendency of this action and permanently from unfairly competing with Plaintiffs in any manner;

(6)     That Defendants, their agents and employees, and all other persons or entities within their respective control or supervision, and all other persons or entities acting in concert or participation with them, be enjoined during the pendency of this action and permanently to return to Plaintiff all copies of Plaintiff's Lists;

(7)     That Plaintiff be awarded judgment against Defendants in an amount sufficient to compensate Plaintiffs for the losses it has suffered, as set forth in each of the causes of action contained herein;

(8)     That Plaintiff be awarded exemplary damages as sought in the causes of action contained herein;

(9)     That Plaintiff be awarded pre-judgment interest and post-judgment interest;

(10)    That Plaintiffs be awarded attorneys fees and all other expenses and costs of this

litigation;

Such other and further relief that this Court may deem appropriate.

FURGANG & ADWAR, L.L.P.
Attorneys for Plaintiffs Rockland Exposition, Inc.

By
Stephanie Furgang Adwar (SA 1711)
Philip Furgang (PF 5654)
CenterRock East
2 Crosfield Avenue
West Nyack, New York 10994
Tel: 845-353-1818

Dated: August 8, 2008

-40-

# NORTHEAST
# RV SHOWS, INC.

> "We don't promote an exceptional number of RV Shows, just a number of exceptional RV Shows."



## SELL YOUR PRODUCT or SERVICE AT NORTHEAST RV SHOW'S

### 33rd Annual RV Product Show 2007
**February 15, 16, 17, 18, 19, 2007**

### 24th Annual RV Marketplace 2007
**September 28, 29, 30, 2007**

**Rockland Community College Field House Arena**
**Suffern, New York**

## *The Finest Display Facility in the Northeast*

**THE LARGEST TOWING & RECOVERY EQUIPMENT PROMOTION IN THE NORTHEAST**

**100,000 SQ. FT. INDOOR EXHIBIT ARENA**

# NORTHEAST TOW TRUCK & RECOVERY EXPO '90

FULL SLATE OF EDUCATIONAL SEMINARS
HUGE RODEO/DRIVING COMPETITION
BEAUTY CONTEST
(Limited inside space available)



- **TOW TRUCKS**
- **RECOVERY EQUIPMENT & ACCESSORIES**
- **RELATED AUTOMOTIVE SERVICES**

# JUNE 15 - 16 - 17, 1990
## ROCKLAND COMMUNITY COLLEGE
## EXIT 14B N.Y.S. THRUWAY
## SUFFERN, NEW YORK

ORGANIZED and PROMOTED by
ROCKLAND EXPOSITION
PROFESSIONAL WRECKER OPERATORS ASSOCIATION OF LONG ISLAND

*INFORMATION 914-343-2772*          *800-223-4648*          *DAVE McCAREY*



# 11th annual
# NORTHEAST
# TRUCK SHOW

**NEW** RADIO CONTROLLED CAR and TRUCK  
**R/C RACING** OFFROAD DIRT TRACK RACING **TROPHIES**

• PUBLIC INVITED TO ENTER — DETAILS INSIDE

# MARCH 27 - 28 - 29, 1987

ROCKLAND COMMUNITY COLLEGE

*ROCKLAND COMMUNITY COLLEGE SUFFERN, N.Y.*

*COMMERCIAL SPACE AVAILABLE*

This agreement made this 18th day of July 1989, between Rockland Exposition, Inc., 529 North Street, Middletown, New York 10940; and the Automotive Service Association of New Jersey (ASA-NJ), 167 Hamburg Turnpike, Bloomingdale, New Jersey 07403-1411; for the purpose of promoting, managing, and operation of an Auto Congress and Trade Exposition to be held annually at the Rockland Community College Field House, Suffern, New York; with the objective of making a profit.

It is agreed that Rockland Exposition, Inc. will be responsible for the management, promotion and direction of the exposition. Rockland Exposition, Inc. will handle all exhibitor space sales and show services rentals. Rockland Exposition, Inc. will handle all finances such as, but not limited to, advertising, show supplies, promotional material, seminars, luncheon, postage, mailings, etc. as approved by ASA-NJ. Rockland Exposition, Inc. will have exculsive rights to all expositions rental services, such as but not limited to carpet/floor covering, tables, chairs, curtains, drapes, electric, etc. as per Schedule A (proposal/quote for management and show services) attached here to and incorporated here with. It is also agreed that Rockland Exposition, Inc. will hire an outside cleaning contractor, plus security for both inside and outside of the trade show approved by the college. Rockland Exposition, Inc. will also be responsible for hiring all show help for registration of attendees, plus exhibitor office help as per Schedule A (proposal/quote for management and show services) attached here to and incorporated here with. It is further agreed that the rental contract for the building (RCC Field House) will be through and in the name of Rockland Exposition, Inc.

The Automotive Service Association of New Jersey (ASA-NJ) will provide endorsement, approval and support by

their own organization, by their national affiliation and through any mergers that may occur. ASA-NJ will be responsible for all hotel functions, including the awards dinner program, plus the invitation of prominent speakers for the educational seminar program; which will be held on the same site as the trade show (and at the exposition hotel) on the Saturday morning prior to the trade show opening. Seminar speakers will be subject to approval by Rockland Exposition, Inc. to avoid conflict with exhibitors. ASA-NJ will also organize and oversee the exhibitor advertisement and show program booklet.

ASA-NJ ACTS agrees to the use of their name in any way including but not limited to mailings, brochures, signs, advertisements, etc. ASA-NJ further agrees to hold their main membership meeting or social event, such as an awards dinner at the show site or exhibitors headquarters hotel every year on the same dates as the trade show, but not during exhibit hours. ASA-NJ, because it recognizes the difficulty in operating a significant event such as ACTS by committee, agrees that its single authoritative point of contract with Rockland Exposition, Inc. will be its President or a designated person appointed by the President; and that Rockland Exposition, Inc. can rely fully on the decisions and communications by the President or his appointee, to be agreed upon as if voted by the ASA-NJ Board of Directors.

ASA-NJ acknowledges that Rockland Exposition, Inc. has developed a significant nationwide exhibitor prospect mailing list over the past 11 years which is used nationwide and which it will use to promote ACTS. Full ownership of this list will remain with Rockland Exposition regardless of any dispute under this agreement. Rockland Exposition, Inc. hereby acknowledges that ASA-NJ ACTS membership lists, business references, educational program input, and

speakers' names are proprietary and the property of ACTS. Rockland Exposition, Inc. agrees that said lists shall not be used for any other purposes other then the promotion of the ACTS show for potential attendees and exhibitors.

Rockland Exposition, Inc. agrees not to manage or organize an Auto Body Congress Trade Show at the Rockland Community College location or within 200 miles of New Brunswick, New Jersey while under contract with ASA-NJ. ASA-NJ acknowledges that Rockland Exposition, Inc. has the exclusive rights to other trade shows which they already manage/coordinate at the Rockland Community College Field House.

ASA-NJ agrees to pay a co-ordinators salary/sales commission to Rockland Exposition Inc. based on exhibitor space sales as follows: a guaranteed salary of $12,000.00; plus 18% of gross exhibitor space sales from $80,000.00 to $100,000.00, and 20% of gross exhibitor space sales over $100,000.00. The co-ordinators salary/sales commission on exhibitor space sales and all direct show expenses will be billed four months prior to the show; three months prior; two months prior; and then ten days prior to the show. ASA-NJ agrees that payment will be made within ten days of receipt of money by ASA-NJ. Rockland Exposition, Inc. will bill ASA-NJ the final show expenses the first of the month following the show.

ASA-NJ will deposit the necessary funds to cover the facility rent, insurance, cleaning and security with Rockland Exposition, Inc. two weeks prior to the show dates, at which time Rockland Exposition, Inc. will forward certified checks to the college in accordance with the college's rental contract. ASA-NJ will pay Rockland Exposition, Inc. for the main electric service, curtains, signs, registration counters and seminar room equipment prior to the opening of the show.

ASA-NJ and Rockland Exposition, Inc. agree that all mail will go directly to Rockland Exposition, Inc. that Rockland Exposition, Inc. will maintain all accounting for the ACTS event. All exhibitor rental checks will be made out to ASA-NJ and forwarded to ASA-NJ treasurer with monthly billing. Rockland Exposition, Inc. will submit within thirty days after the event, an itemized list of expenses and income for the show to ASA-NJ, at which time a meeting will be scheduled to finalize the event.

This agreement shall be considered as drafted equally by both parties. Any ambiguity shall not be construed against either party.

It is the intent of all parties to promote and advance the Automotive Service Industry through out the northeast. ASA-NJ agrees that after reviewing the final show report and the estimated proposal for the following year's event they must within 45 working days of the close of the show either, submit a $1000.00 deposit to Rockland Exposition, Inc. to hold the following years show dates or they must serve written notice by registered mail that they wish to discontinue this agreement. It is further agreed that ASA-NJ will not be involved in any other related exposition four months prior or four months after this exposition.

All disputes under the agreement shall be resolved according to New York State Law. This contract shall be deemed created at 529 North Street, Middletown, New York 10940. Any changes to this agreement must be in writing and signed by both parties. The parties below agree that they have full authority to bind their perspective organizations to this agreement. This agreement shall be deemed effective on this 18ᵗʰ day of July 1989.

Executed on this 18th day of July 1989 at Peters Body Fender for Rockland Exposition, Inc.

_____

President, Rockland Exposition, Inc.

Executed on this 18th day of July 1989 at Peters Body & Fender, for Automotive Service Association of New Jersey. (ASA-NJ ACTS)

_____

President, ASA-NJ

# ROCKLAND EXPOSITION, INC.

**529 NORTH STREET**
**MIDDLETOWN, NEW YORK 10940**

**800-223-4648**
**914-343-2772 in N.Y.**

SCHEDULE A


QUOTE FOR
MANAGEMENT/SHOW CO-ORDINATOR

ACTS - AUTO CONGRESS TRADE SHOW

APRIL 20-21, 1990

ROCKLAND COMMUNITY COLLEGE
Suffern, New York

(Based on 160 Booths/90 exhibitors)

# ROCKLAND EXPOSITION, INC.
**529 NORTH STREET**
**MIDDLETOWN, NEW YORK 10940**

**800-223-4648**
**914-343-2772 in N.Y.**

ACTS - AUTO CONGRESS & TRADE SHOW

APRIL 20, 21, 1989 (TENTATIVE DATES)

PROPOSED EXPENSES

Note:  Based on 160 Exhibitor Booths
       (2) Day Show
       (2) Seminar Areas to Seat 200 People each/Classroom Style
       (1) Large Seminar/Luncheon Area


College Facility Rent

Thurs., April 20, 6p.m. - Sat., April 21, 12p.m.        $ 6000.00

Electric

Overhead Electric Systems        $3750.00
Stand By Electrician (12) OT       540.00
Sales Tax                          268.13                $ 4558.13

Cleaning

Supplies/Labor (67 hrs)          $1206.00
Floor Machine                      250.00
30 yd Dumpster (with tax)          584.38                $ 2040.38

Curtain/Drapes

(160)  10' X 10' Exhibitor Booths
               @ $20.00          $3200.00
(300') 8' High (2) Seminar Areas   525.00
(50')  3' High Seminar/Lobby        50.00
(30')  Balcony/Blockoffs            75.00
(4)    8' X 30" Decorated Tables
       (Seminar Rm) @ $25.00       100.00
Sales Tax                          246.88                $ 4196.88

Exhibitor Sign Service

(90)  6" X 36" Exhibitor Signs
               @ $ 6.00          $ 540.00
Sales Tax                           33.75                $  573.75

Registration/Ticket Counter

24' Formica Registration Center  $ 475.00
Sales Tax                           29.69                $  504.69

Plywood Service

1000 Plywood Squares        $ 350.00
Sales Tax                        21.88        $   371.88


Security

Outside (RCC Security)        $ 580.00
  Students 40 hrs (@ $6.50)/Aides 20 hrs (@ $16.00)

Inside (Armed Security)        $1148.00        $ 1728.00
  82 hrs            (@ $14.00)

Show Help/Registration

Registration Help - 56 hrs
                @ $10.00        $ 560.00
Exhibitor Help  - 24 hrs
                @ $12.00         288.00        $   848.00

Merchant Permit                              $   150.00

Phone Service at RCC During Show

    Temporary Show Office Phone Service        $   200.00
        Thursday thru Saturday

Two Seminar Rooms/Luncheon Area
(Classroom Seating for 200 People in Each Seminar Room)

Table/Chair Service:  (furnish and set-up)

(80) 8' X 30" Tables (covered on top with protective
                      white covering)
            @ $14.00        $1120.00
(400) Fiber Folding Chairs
            @ $ 1.50        $ 600.00
        Sales Tax           $ 107.50        $ 1827.50

Set-Up Luncheon Seminar Area

Re Set-up (2) Seminar Rooms
Recover (80) Tables
Remove Divider, Etc.                          $   200.00



TOTAL EXPENSES                                $23199.21

## Co-ordinator Salary

Includes:
* Show Co-ordinator: to oversee entire set-up, show hours, and breakdown of event.
* Sales of all exhibitor space
* Assign all exhibitor booth space/contracts

* Secretarial promotional services
* Office equipment, office rent, utilities, fax machine
* Year Round 800 telephone service and message center
* Computerized mailing service ^
* Typing Mailing list
* Bulk Mailing Permit (3rd class); First Class Presort Permit
* Return Postage Permit (business reply)
* Mailing Labels
* Labor for show bulk mailings
* Lay-out floor plan
* Lay-out brochure for sales of space
* Show poster layout
* Promotion VIP pass program
* Labor contracts for space
* Typing Exhibitors rules for building
* Exhibitor Pass List/Paperwork/Insurance Forms
* Placement of show advertisements in trade publications
* Oversee Fire/Electric Inspection Permits

Co-ordinator Salary

| | |
|---|---|
| 15% of Gross Exhibitor Space Sales up to | $ 80,000 |
| 18% of Gross Exhibitor Space Sales from $ 80,000 to | $100.000 |
| 20% of Gross Exhibitor Space Sales over | $100,000 |
| Guarantee Minimum Salary of | $ 12,000 |

Items not included in salary:

* Printing Costs of Show Material
* Postage Costs of Show Mailings
* Purchasing of Additional Mailing Lists
* Legal Service
* Outside Shows/Travel/Auto/Gas
* ^ Computer Time to Insert Original Mailing List
* Office Supplies (Labels, etc.)
* All Direct Show Expenses

## Budget Items

* Advertising Cost
* Printing Cost
* Postage
* Size/Number of Mailings

## Accounting/Show Expenses

Coordinators salary/commission on exhibit space sales and all direct show expenses will be billed as follows:

| | |
|---|---|
| 4 Months Prior To Show | December 10th, 1989 |
| 3 Months Prior To Show | January 10th, 1990 |
| 2 Months Prior To Show | February 10th, 1990 |
| 1 Month  Prior To Show | March 10th, 1990 |
| 10 Days  Prior To Show | April 10th, 1990 |

ASA-NJ agrees payment will be made within 10 days of billing date.

Final show expenses will be billed May 1st, 1990.

Final expense sheet will be turned in May 10th, 1990; at a show committee meeting to go over entire show report.

In order to secure the tentative show dates of April 20 and April 21, 1990 at the Rockland Community College Field House; we will need to have a commitment from your show committee by June 1, 1989.  As discussed, this will directly effect two of our other trade shows in order to secure these show dates.


## Commitment To Dates

* $1000.00 Deposit Payable to Rockland Exposition, Inc. to be used to secure show dates.

* Legal Agreement Drawn-Up

* Last (3) Years of Exhibitor Space Contracts including leads for space that were unsigned.

* Mailing List of Potential Exhibitors

* Mailing List of (VIP) Promotional Show Passes

* Samples of all Promotional Items for the last (3) shows (including brochures, contracts, rules, service forms, vip passes, promotional flyers, advertising schedules, exhibitor correspondence letters, etc.)

Suggested

SEMINAR SCHEDULE


| Friday, April 20 | Seminar Room #1 | Seminar Room #2 |
|---|---|---|
|  | 6:30 p.m. | 7:15 p.m. |
| (Room for 5 | 8:00 p.m. | 8:45 p.m. |
| Seminars) | 9:30 p.m. |  |


Saturday, April 21      Holidome Banquet Room
                         8:00 a.m.   Continental Breakfast
(1 Seminar)              8:30 a.m.   Panel Seminar


| Saturday, April 21 | Seminar Rooom #1 | Seminar Room #2 |
|---|---|---|
|  | 10:15 a.m. | 11:00 a.m. |
| Lunch/Seminar | 12:30 p.m. (Full Room) |  |
|  | 2:15 p.m. | 3:00 p.m. |
| (Room for 6 | 4:00 p.m. |  |
| Seminars) |  |  |


TOTAL OF 12 SEMINARS


Initial Set-up        ( 2 rooms)

   (2) Individual Seminar Rooms
      (40) 8' X 30" Tables per room
      (200) Chairs (Classroom Style) per room

Luncheon Set-up/Large Seminar Room    (15 min. set-up time)

   Remove 8' High Divider Curtains
   Remove (2) Speaker Tables in Room #2

   (This will give you seating for 400 people, classroom style,
which can be used to serve a chicken dinner lunch.)

Saturday P.M. Set-up    (2 Rooms - 30 min. set-up time)

   Install 8' High Divider Curtains
   Install (2) Speaker Tables in Room #2
   Recover 80 Tables (After Luncheon) With New White Protective
Covering

BUDGET ITEMS

Show Attendee Badge/Badge Holders

```
3000 Printed Badge $90.00/M     $270.00
Clear Bull Dog Clip @ $.25       750.00    $ 1020.00
```

Show Liability Insurance                    $ 1287.00

Seminar Room Equipment

```
VCR (Video Player)              $165.00
TV (Video Monitor)               165.00
Hand Microphone & Speakers       200.00    $  530.00
```

Seminar/Lunch Program

Saturday, April 21 -12:30 p.m.- Inside Field House/Main Floor
Chicken Dinner Luncheon including:

```
Barbecue                Knives/Forks/Spoons
1/2 Chicken             Paper Products
Potato Salad            Pickles/Olives
Corn on the Cob         Ice Tea/Coffee
Potato Chips            Water Melon

        $12.00 per person
        Private Caterer
```

* Note:  As discussed, Insurance quote will be worked out after
further discussion with insurance carrier.

# ROCKLAND EXPOSITION, INC.

**529 NORTH STREET**
**MIDDLETOWN, NEW YORK 10940**

*800-223-4648*
*914-343-2772 in N.Y.*

SCHEDULE A

QUOTE FOR SHOW SERVICES

ACTS - AUTO CONGRESS & TRADE SHOW

APRIL 20, 21, 1990 (Tentative Show Dates)

ROCKLAND COMMUNITY COLLEGE
Suffern, New York

# ROCKLAND EXPOSITION, INC.

**529 NORTH STREET**
**MIDDLETOWN, NEW YORK 10940**

*800-223-4648*
*914-343-2772 in N.Y.*

May 5, 1989

Hank Peters
PETERS BODY & FENDER CO. INC.
350 West Oakland Avenue
Oakland, NJ  O7436

Dear Mr. Peters:

We would like to quote you as follows on the 13th Annual Auto Congress & Trade Show (ACTS) to be held at the Rockland Community College Field House, Suffern, New York; with tentative show dates of April 20 and 21, 1990.

Rockland Exposition, Inc. would provide the following services:

1.  OVERHEAD ELECTRIC SYSTEM (ALL COPPER WIRE)

A.  Furnish and install three (3) main feeder support cables across the width of the field house, each being supported by aircraft cable to the roof girders and steel brackets to the concrete pillars. Each main feeder cable to have six (6) floor drops to provide electric service as ordered to the individual sections of the main floor.

B.  Furnish and install four (4) 200 amp main panels on the balcony wall above the exit doors.

C.  Furnish and install four (4) 200 amp electric feed cables from supply to the main panels.

D.  Furnish and install four (4) 50 amp stantion panels to supply perimeter booths.

E.  Furnish and install six (6) 100 amp stantion panels and fourteen (14) 40 amp lines to distribute electric to individual exhibitor areas.

The cost to install main feeders and floor drops would be Three Thousand Seven Hundred and Fifty Dollars ($3,750.00).

F.   Furnish  and  install electric outlets, extension cords, etc. to exhibitors  as they have individually ordered at their own expense, (as per rate sheet).

G.   Furnish  a  standby  electrician during all show hours, straight  time $30.00 per hour and overtime at $45.00 per hour. If  a  union  man is required the cost will be approximately 50% more.  Electrician straight time (8am-4pm, Monday - Friday).

2.   CURTAIN/DRAPE SERVICES

A.   Furnish  and  install according to show management floor plan, draped exhibitor booths at a cost of:

      10' X 10' Booths          @ $20.00
      10' X 15' Booths          @ $30.00
      10' X 20' Booths          @ $40.00
      (includes 8' high back wall and 30" side walls)

All curtain/drape material is flame retardent.

B.   Furnish and install as ordered by show manangement:

      8' High Curtain Walls     @ $ 1.75 per foot
      30" High Side Walls       @ $ 1.00 per foot

C.   Furnish  and  install curtain background (Approx. 50' X 40') for two seminar areas on main floor.

      Approx. 300' of 8' High Curtain Wall
          @ $ 1.75 per foot   $525.00

3.   EXHIBITOR BOOTH FURNITURE

A.   Furnish  booth  furniture  and  show  accessories  to exhibitors  as  they  have  individually  ordered  at  their own expense. (Including tables, chairs, etc. as per rate sheet.)

4.   EXHIBITOR SIGN SERVICE

A.   Furnish  and  install  6" X  36"  plastic  exhibitor identification sign as ordered by show management.

      Single Line of Print      @ $ 6.00
      Double Line of Print      @ $ 7.00

5.  REGISTRATION/TICKET COUNTER (FORMICA)

    A.  Furnish and install 24' X 10' registration/ticket counter to be used for show registration area. Includes 24' formica counter, storage shelves, electric outlets, lighted sign panels, three 8' skirted tables, eight padded chairs, 8' high back wall and 30" side walls.

    The cost of a 24' Formica registration/ticket counter would be Four Hundred Seventy Five Dollars ($475.00).

6.  PLYWOOD SERVICE

    A.  Furnish plywood squares (Approx. 18" X 24") to be used under all tires and equipment on display to protect gym floor. (College is installing a new floor and this will be in the rental contract for their protection).

    1000 Plywood Squares- Truck, Delivery, Rental, Pickup will cost Three Hundred Fifty Dollars ($350.00).

    ROCKLAND EXPOSITION, INC. understands it will:

1.  Set-up main feeder support cables and floor drops Thursday, April 19, 1990. Set-up exhibitor booths, identification signs and install electric lines to exhibitors who have ordered electric service.

2.  Remove electric system, exhibitors curtains, etc., Saturday evening, April 21, 1990; after the close of the show, (5 p.m.).

3.  Be furnished with an exhibitor sign list and basic floor plan of exhibitor location by mail, two weeks prior to the show. (April 5, 1990). Additions to sign order maybe made through April 12, 1990.


    Please call our office when you have had a chance to look this proposal over, so we may discuss any questions. I have included a tentative floor plan for approximately 300 booths plus a sample exhibitor service form. We are looking forward to working with your organization and plan to have coverage from our company during all hours of your show to make everything run smoothly.

    Thank you for the opportunity to bid on these services.

                        Sincerely,

                        ROCKLAND EXPOSITION SERVICES

                        David McCarey

This agreement made this ___26___ day of ___APRIL___ 2004 between Rockland Exposition, Inc., 388 East Main Street, Middletown, New York 10940; and the Alliance of Automotive Service Providers of the Garden State (AASP-GS), PO Box 5172, Somerville, New Jersey 08876; for the purpose of promoting, managing, and operation of the Northeast Regional Auto body/Automotive Trade Show to be held annually at the Rockland Community College Field House Arena, Suffern, New York; with the objective of making a profit.

It is agreed that Rockland Exposition, Inc. will be responsible for the management, promotion and direction of the exposition. Rockland Exposition, Inc. will handle all exhibitor space sales, and show services rentals. Rockland Exposition, Inc. will handle all finances such as but not limited to, advertising, show supplies, etc. as approved by AASP-GS. Rockland Exposition, Inc. will have exclusive rights to all exposition rental services, such as but not limited to carpet/floor covering, tables, chairs, curtains, drapes, electric, etc. as per Schedule A (proposal/quote for management and show services) attached here to and incorporated here with. It is also agreed that Rockland Exposition, Inc. will hire an outside cleaning contractor plus security for both inside and outside of the trade show approved by the college. Rockland Exposition Inc. will also be responsible for hiring all show help for registration of attendees, plus exhibitor office help as per Schedule A attached here to and incorporated here with. It is further agreed that the rental contract for the building (RCC Field House) will be through and in the name of Rockland Exposition, Inc.

The Alliance of Automotive Service Providers Garden State (AASP-GS) will provide endorsement, approval and support by their own organization, by their national affiliation and through any mergers that may occur. AASP-GS will be responsible for all hotel functions, including the awards dinner program, plus the invitation of prominent speakers for the educational seminar program, plus the invitation of prominent speakers for the educational seminar program; which will be held on the same site as the trade show. Seminar speakers will be subject to approval by Rockland Exposition, Inc. to avoid conflict with exhibitors. AASP-GS will also organize and oversee the exhibitor advertisement and show program booklet.

AASP-GS Northeast Regional Auto body/Automotive Trade Show agrees to the use of their name in any way including but not limited to mailings, brochures, signs, advertisements, etc. AASP-GS further agrees to hold their main membership meeting or social event, such as an awards dinner at the show site or exhibitors headquarters hotel every year on the same dates as the trade show, but not during exhibit hours. AASP-GS, because it recognizes the difficulty in operating a significant event such as the Northeast Regional Auto body/Automotive Trade Show by committee, agrees that its single authoritative point of contract with Rockland Exposition, Inc. will be its President or a designated person appointed by the President; and that Rockland Exposition, Inc. can rely fully on the decisions and communications by the president or his appointee to be agreed upon as if voted by the AASP-GS Board of Directors.

AASP-GS acknowledges that Rockland Exposition, Inc. has developed a significant exhibitor prospect mailing list over the past 25 years which is used nationwide and which it will use to promote

the Northeast Regional Auto body/Automotive Trade Show. Full ownership of this list will remain with Rockland Exposition, Inc. regardless of any dispute under this agreement. Rockland Exposition, Inc. hereby acknowledges that AASP-GS Northeast Regional Auto body/Automotive Trade Show membership lists, business references, educational program input and speakers names are proprietary and the property of Northeast Regional Auto body/Automotive Trade Show for potential attendees and exhibitors.

Rockland Exposition, Inc. agrees not to manage or organize an Auto Body Congress Trade Show at the Rockland Community College location or within 200 miles of New Brunswick, New Jersey while under contract with AASP-GS. AASP-GS acknowledges that Rockland Exposition, Inc. has the exclusive rights to other trade shows which they already manage/coordinate at the Rockland Community College Field House.

AASP-GS agrees to pay coordinators salary/management fee to Rockland Exposition, Inc. based on exhibitor space sales as follows: a guaranteed salary of $18,000.00; plus 21% of gross exhibitor space sales from $80,000.00 to $100,000.00 and 23% of gross exhibitor space sales over $100,000.00 for the 2006 event. The coordinators salary/management fee on exhibitor space sales and all direct show expenses will be billed five months prior to the show; four months prior; three months prior; two months prior; and then (14) days prior to the show. AASP-GS agrees that payment will be made within ten days of receipt of money by AASP-GS. Rockland Exposition, Inc. will bill AASP-GS the final show expenses the first of the month following the show.

AASP-GS will deposit the necessary funds to cover the facility rent, insurance, cleaning and security with Rockland Exposition, Inc. two weeks prior to the show dates, at which time Rockland Exposition, Inc. will forward certified checks to the college in accordance with the college rental contract. AASP-GS will pay Rockland Exposition, Inc. for the main electric service, curtains, signs, registration area, and seminar room equipment prior to the opening of the show.

AASP-GS and Rockland Exposition, Inc. agree that all mail will go directly to Rockland Exposition, Inc. that Rockland Exposition, Inc. will maintain all accounting for the Northeast Regional Auto body/Automotive Trade Show event. All exhibitors space rental checks will be made to AASP-GS and forwarded to AASP-GS treasurer with monthly billing. Rockland Exposition, Inc. will submit within thirty days after the event, an itemized list of expenses and income for the show to AASP-GS, at which time a meeting will be scheduled to finalize the event.

This agreement shall be considered as drafted equally by both parties. Any ambiguity shall not be construed against either party.

It is the intent of all parties to promote and advance the Automotive Service Industry throughout the northeast. This agreement is to cover the 2005 exposition through the 2006 exposition, and annually from thereafter, become an automatic two year renewal clause. (After the 2005 exposition, if a renewal agreement is signed, it would then cover the 2006 and 2007 expositions). AASP-GS agrees to submit a $2000.00 deposit for the 2006 exposition. AASP-GS further agrees that after reviewing the 2005 show report and the estimated proposal for the following years event they must within 45 working days of the

close of the 2005 show, either submit $2000.00 deposit to Rockland Exposition, Inc. to hold the 2007 show dates or they must serve written notice by registered mail that they wise to discontinue this agreement after the 2006 event. It is further agreed that AASP-GS will not be involved in or endorse any other related exposition four months prior or four months after the latest contracted exposition.

All disputes under the agreement shall be resolved according to New York State Law. This contract shall be deemed created at 388 East Main Street, Middletown, New York 10940. Any changes to this agreement must be in writing and signed by both parties. The parties below agree that they have full authority to bind their perspective organizations to this agreement. This agreement shall be deemed effective on this 26th day of April 2004.

Executed on this 26th day of April 2004 at 388 East Main Street, Middletown, New York 10940 for Rockland Exposition, Inc.

President of Rockland Exposition, Inc

Executed on this 26th day of April 2004 at 745 Hamburg Turnpike Pompton Lakes N.J. for Alliance of Automotive Service Providers Garden State (AASP-GS)

AASP-GS, President/Trade Show Chairman

## SCHEDULE A

## QUOTE FOR
## MANAGEMENT/SHOW COORDINATOR

### NORTHEAST REGIONAL AUTOBODY/AUTOMOTIVE TRADE SHOW
APRIL 1, 2, 3, 2005
Rockland Community College Field House Arena
Suffern, New York
(based on 2004 show)

# NORTHEAST REGIONAL AUTOBODY/AUTOMOTIVE TRADE SHOW
## APRIL 1, 2, 3, 2005

Proposed Expenses for 2005 Event

Note: Based on 2004 show figures
3 Day Show
Reflects increase in electric service and carpet service
Current sales tax rate of 8.125% is applied, however may increase by show date

| | | | |
|---|---|---|---|
| **College Facility Rent** | | | $14,900.00 |
| Wed. March 24 6pm - Sun. March 28 12 midnight | | | |
| | | | |
| **Seminar Rooms Rent** | | | $300.00 |
| 3 Seminar Rooms, Fri March 26-Sat March 27 | | | |
| | | | |
| **Electric** | | | $6,000.00 |
| Overhead Electric System - 4 Lines | | | $487.50 |
| Sales Tax | | | $6,487.50 |
| Total | | | |
| | | | |
| **Cleaning** | | | $3,366.00 |
| Supplies/Labor (187) | | | $375.00 |
| Floor Machine from RCC | | | $3,741.00 |
| Total | | | |
| | | | |
| **Garbage/Debris** | | | $1,405.94 |
| (4) 30yd Dumpsters (with tax) | | | |
| | | | |
| **Pipe/Drape** | | $20.00 | $3,900.00 |
| 195 | 10' x 10' Booths @ | $1.75 | $1,050.00 |
| 600 | 8' High Drape @ | $1.00 | $80.00 |
| 80 | 3' High Drape @ | | $100.00 |
| 40 | Balcony Block offs | | $63.00 |
| | NJ Automotive (Chairs/Tables) Balcony | | $5,193.00 |
| | Sub Total | | $421.93 |
| | Sales Tax | | $5,614.93 |
| | Total | | |
| | | | |
| **AASP/GS Tent Area Centerpiece** | | | $600.00 |
| 30' x 40' White Frame Tent with lights | | | $487.50 |
| 30' x 40' Carpet | | $1.65 | $16.50 |
| 10 | Chairs @ | | $143.00 |
| 8 | Tables Decorated (4) 8'x30; (2) 8' x 30' | | n/c |
| 2 | Easels | | $1,247.00 |
| | Sub Total | | $101.32 |
| | Sales Tax | | $1,348.32 |
| | Total | | |
| | | | |
| **Exhibitor Sign Service** | | $7.00 | $966.00 |
| 138 | Exhibitor Signs (8" x 36") @ | | $78.49 |
| | Sales Tax | | $1,044.49 |
| | Total | | |

**Show Signage**

| | | | |
|---|---|---|---|
| 7 | Install Large Aisle Signs @ | $35.00 | $245.00 |
| | AASP/GS Banner (Indoor) | | n/c |
| | Install Seminar Room/Staircase Directional Signs | | $20.00 |
| 4 | Large Seminar List Signs @ | $22.00 | $88.00 |
| 4 | Easels (Lobby, Halls, Floor for seminars) @ | $12.00 | $48.00 |
| | Sub Total | | $401.00 |
| | Sales Tax | | $32.58 |
| | Total | | $433.58 |

**Catering Service**

| | | |
|---|---|---|
| 325 | Continental Breakfast | $1,025.00 |

**Registration Area (Exhibitor, Attendee, Pre-Reg)**

| | | |
|---|---|---|
| | 40' Registration Counter (13 tables) | $318.50 |
| | Sales Tax | $25.88 |
| | Total | $344.38 |

**Plywood Service**

| | | |
|---|---|---|
| | Load/Unload Twice, Trucking, Storage | $75.00 |
| 15 | Full Plywood Sheets | $350.00 |
| 1000 | Plywood Squares | $34.53 |
| | Sales Tax | $459.53 |
| | Total | |

**Fire Attendants**

| | | | |
|---|---|---|---|
| 32.5 | 5 Attendants (Friday @ 6.5 hrs) | $13.70 | $445.25 |
| 40 | 5 Attendants (Saturday @ 8 hrs) | $13.70 | $548.00 |
| 27.5 | 5 Attendants (Sunday @ 5.5 hrs) | $13.70 | $376.75 |
| 8.5 | 1 Relief (Sat & Sun) | $15.70 | $133.45 |
| 21 | Welding Areas - 1 Attendant | $24.00 | $504.00 |
| 5 | Radio Rental @ | $25.00 | $125.00 |
| | Total | | $2,132.45 |

**Security**

Outside - RCC Security

| | | | |
|---|---|---|---|
| 71 | RCC Students @ | $7.00 | $497.00 |
| 27 | RCC Aides @ | $33.00 | $891.00 |
| | College Safety Inspection | | $150.00 |

Inside - Armed Security

| | | | |
|---|---|---|---|
| 253 | AB Security - hours w/tax | $20.00 | $5,471.00 |
| | Total | | $7,009.00 |

**Show Registration Help**

| | | | |
|---|---|---|---|
| 73 | Exhibitor Registration Hours | $15.50 | $1,131.50 |
| 152 | Attendee Registration Hours | $10.50 | $1,596.00 |
| | Total | | $2,727.50 |

**Merchant Permit**

| | |
|---|---|
| | $300.00 |

**Phone/Fax Service at RCC During Show**

| | |
|---|---|
| Temporary Show Office Phone Service | $200.00 |

**Seminar Rooms (Upstairs)**

| | | | |
|---|---|---|---|
| 134 | Fiber Folding Chairs @ | $1.65 | $221.10 |
| 33 | White Covered 8' Tables @ | $14.50 | $478.50 |
| 340 | Drape 8' High @ | $1.75 | $595.00 |
| 2 | Decorated 8' Tables @ | $23.50 | $47.00 |
| | Sub Total | | $1,341.60 |
| | Sales Tax | | $109.01 |
| | Total | | $1,450.61 |

**Carpet Service**
(Includes all show aisles, balcony entry walkway to main
floor and two upstairs seminar rooms.)

| | | |
|---|---|---|
| Installation, Rental, Removal | | $11,200.00 |
| Sales Tax | | $910.00 |
| Total | | $12,110.00 |

**Computerized Badge System**

| | | |
|---|---|---|
| 5 | Computer Stations plus fax/copier | $1,132.50 |
| | Sales Tax | $92.02 |
| | Total | $1,224.52 |

**Road Signs**

| | | |
|---|---|---|
| 13 | 4' x 4' Signs, Trucking, Setup, Removal | $350.00 |
| | Sales Tax | $28.44 |
| | Total | $378.44 |

**Forklift Service (Movein - Moveout)**

| | | | |
|---|---|---|---|
| 5 | Rentals - Pickup and Delivery | | $2,110.00 |
| | (Includes (2) 5000lb, 6000lb, 8000lb, 8000lb) | | |
| 13 | Propane Tanks @ | $20.00 | $260.00 |
| 50 | 5 Drivers @ 10hrs Thursday | $32.00 | $1,600.00 |
| 10 | Driver @ 10hrs Friday | $32.00 | $320.00 |
| 40 | 5 Drivers @ 8hrs Sunday | $32.00 | $1,280.00 |
| | Total | | $5,570.00 |

**Insurance**

| | |
|---|---|
| Show Liability Insurance | $2,175.00 |
| Cancellation Insurance | $4,180.00 |
| Total | $6,335.00 |

**Food Court Area**

| | | | |
|---|---|---|---|
| 4 | White Covered 8' Tables @ | $14.50 | $58.00 |
| 32 | Chairs @ | $1.65 | $52.80 |
| | Sub Total | | $110.80 |
| | Sales Tax | | $9.00 |
| | Total | | $119.80 |

**Total Expenses**                                        $76,061.98

Coordinator Salary (includes):

- Show Coordinator: to oversee entire set-up, show hours and breakdown of event
- Sales of all exhibitor space
- Assign and issue all exhibitor booth space contracts
- Secretarial promotional services for exhibitor sales
- Office equipment, office rent, utilities, fax machine
- Year round 800 telephone service and message center
- Computerized mailing service
- Printing mailing list
- Presort and Standard mailing permits
- Printing mailing labels
- Labor for show presort/standard mailings
- Lay-out floor plan
- Lay-out brochure for sales of space
- Show poster layout
- Promotion VIP pass program
- Labor contracts for space
- Typing exhibitor rules for building
- Exhibitor pass list, paperwork, insurance forms
- Placement of show advertisements in trade publications
- Oversee fire/electric inspection permits
- Seminar program/.flyer layout

Coordinator Salary:

- Exhibitor space sales to $80,000 guaranteed minimum salary of $18,000
- 21% of gross exhibitor space sales from $80,000 to $100,000
- 23% of gross exhibitor space sales over $100,000

Items not included in Salary:

- Printing costs of show materials
- Postage costs of show mailings
- Purchasing of additional mailing lists
- Legal service
- Outside shows/travel/auto/gas
- Computer time to insert mailing lists
- Office supplies (labels, disks, paper, toner, etc.)
- All direct show expenses

Budget Items:

- Advertising Costs
- Printing Costs
- Postage
- Size/Number of Mailings

<u>Accounting/Show Expenses:</u>

- Coordinators salary/commission on exhibit space sales and all direct show expenses will be billed as follows:
- 5 months prior to show        November 1, 2004
- 4 months prior to show        December 1, 2004
- 3 months prior to show        January 1, 2005
- 2 months prior to show        February 1, 2005
- 1 month prior to show        March 1, 2005
- 10 days prior to show        March 20, 2005

AASP-GS agrees payment will be made within 10 days of billing date.

Final show expenses will be billed approx. April 15, 2005
Final expense sheet will be turned in April 15, 2005 or when scheduled; at a show committee meeting to go over entire show report.

<u>Commitment to 2006 Dates</u>

- Legal Agreement Signed
- $2000.00 deposit (for Field House) for 2006 event, payable to "Rockland Exposition, Inc." by June 1, 2004
- Hotel Agreement for Saturday, April 2, 2005
- Hotel Agreement for Saturday, March 25, 2006

# ROCKLAND EXPOSITION, INC.

*388 EAST MAIN STREET*
*MIDDLETOWN, N.Y. 10940*

*845-343-2772*
*800-223-4648*
*845-344-1203 FAX*

DATE:      March 25, 2008

TO:         Glenn Villacari
            Pete Cook
            AASP/NJ

FAX:        973.662.9001 AND 973.674.8185

FROM:     David McCarey

RE:          Phone Call March 18, 2008 Decision Not to Participate with Rockland Exposition
              And Sponsor the Northeast 2009 Regional Autobody Automotive Trade Show

Gentlemen:

Please fax to us (845.344.1203) or email to us (info@rocklandexpo.com) your written decision
to no longer participate with Rockland Exposition or sponsor the Northeast event at the Rockland
Community College for 2009 so we have a copy for our files.

We are disappointed AASP/NJ will not be sponsoring the 2009 Northeast Regional Autobody
Automotive Trade Show.  Rockland Exposition however understands your Executive Board has
been researching other options to generate more income in this economically difficult time for
the last two years.  The core group of your long time volunteer member shops and allied
businesses has been great over the past twenty years.

Rockland Exposition **will** continue to promote and manage a 2009 Northeast Regional
Autobody/Automotive Trade Show (on the March 27, 28, 29, 2009 dates) at the Rockland
Community College Arena, even with the loss of the AASP/NJ sponsorship.  Rockland
Exposition already secured and committed to these dates last year for the Northeast Regional
event.

The 2009 Northeast Regional event will explore interest from other related groups and
magazines to try and replace the AASP/NJ sponsorship for the 2009 event.

We have three attendee badges made for the Meadowlands Expo representatives as per Alicia's
email.  Please request that they do not arrive prior to 6pm.  Please also remind them in advance
that there is a strict "NO SOLICTING POLICY" enforced at this event.  They can collect
business cards, printed material and familiarize themselves with the products, just like when I
attend other events; however, no soliciting for future vendors sales during this event.  This will
start on Monday, March 31, 2008.

# ROCKLAND EXPOSITION, INC.

*388 EAST MAIN STREET*
*MIDDLETOWN, N.Y. 10940*

*845-343-2772*
*800-223-4648*
*845-344-1203 FAX*

## NORTHEAST REGIONAL AUTOBODY AUTOMOTIVE TRADE SHOW

### IF 'NO' DECISION FOR FUTURE:

- Fax or email 'no' letter to Rockland Exposition, Inc. by Monday 3/31/08
- Mail original letter registered mail to Rockland Exposition, Inc. by 4/4/08

### IF 'YES' DECISION FOR FUTURE:

### AASP/NJ COMMITMENT TO 2009 EVENT

- Fax or email 'yes' letter to Rockland Exposition, Inc. by Monday 3/31/08
- Mail original contracts and letter by 4/4/08 with $3000.00 additional deposit due
- Provide theme and picture for printing of 2009 event materials by 4/7/08 final 2008 meeting.

### AASP/NJ COMMITMENT TO 2010 EVENT

- Mail deposit of $5000.00 for 2010 event to Rockland Exposition Inc. by May 15, 2008 (45 days after 2008 event.)



P.O. Box 734
Neptune, NJ 07753

Date:          March 26, 2008

From:          AASP/NJ Northeast Trade Show Committee

To:            Northeast 2008 Trade Show Vendors

Re:            Venue Change for 2009

The NORTHEAST Regional Autobody/Automotive Trade Show has for 30 years been a
critically important event, both to AASP/NJ and to the automotive repair industry. We
continually look for ways to improve the size and quality of the show, and to produce a
"win-win" event for both vendors and participants. Keeping the show healthy and vibrant
sometimes requires new thinking, the assumption of risk, and difficult decisions.

For the past year, the AASP/NJ Trade Show Committee has researched the possibility of
moving our trade show to a new location in an effort to give the show a new face, and
thus drive increased attendance. We have recently made the formal decision to move the
2009 NORTHEAST Trade show to the Meadowlands Exposition Center in Secaucus,
New Jersey on the weekend of March 20-22, 2009. We feel that this new location will
result in an improved show for several reasons, including:

- A more convenient geographic area and a more attractive convention center for
  vendors and attendees;
- Eight times (8x) as many automotive repair shops within a 30 mile radius;
- Improved lodging, entertainment and dining options; and
- More sophisticated marketing strategies.

We are counting on your support as we transition to this new venue, and we give you our
promise that we will do everything in our power to make NORTHEAST 2009 a great
show that gives you, our vendors, compelling reasons to return. Our marketing
representatives will be visiting your booth to introduce you to the 2009 NORTHEAST
show and to answer any questions you might have. We also encourage you to stop by the
AASP/NJ booth, where you will find representatives that are glad to share our vision for
next year's show.

We would also like to invite you to a NORTHEAST 2009 "Open House Luncheon" at
the Meadowlands Exposition Center this April 15th at noon for a first-hand look at the
facility (you can also go online at www.mecexpo.com) and the services it offers.

We thank you in advance for your past, present and future support of the Northeast Trade
Show.

P.O. Box 734
Neptune, NJ 07753

Contact: Thomas Greco
        973-667-6922

3/25/08

# AASP/NJ Moving 2009 NORTHEAST Show to Meadowlands Exposition Center

The Alliance of Automotive Service Providers of New Jersey (AASP/NJ) announced today that their flagship event, the NORTHEAST automotive repair trade show, will be moving to the Meadowlands Exposition Center at Harmon Meadow in Secaucus, NJ in March 2009.

"We are thrilled and excited to be moving to such an impressive facility," AASP/NJ President Tom Elder says, "a facility that is built specifically for trade shows with all of the latest technology and accommodations to not only make our vendors stand out, but to also draw many, many more attendees."

The Meadowlands Exposition Center is a state-of-the-art facility located five miles from New York City. The MEC offers 61,000 sq. ft. of exhibit space with meeting rooms and banquet facilities all contained within the facility.

"We have been in Suffern for close to 20 years," Elder adds, "and frankly we have seen our

3/26/2008

attendance drop dramatically over the last three or four years. When we polled our membership and our vendors, the overwhelming reasons for lack of participation was the distance and the fact that the arena was outdated. When we asked if the Meadowlands was a more viable option, the response was incredibly positive."

"Like the old saying goes, location is everything," Elder continues. "The MEC is accessible from all major interstate highways including the NJ Turnpike and the Garden State Parkway and it's just minutes from Newark Airport. The show hotels are all within walking distance and the parking for attendees and exhibitors surrounds the facility. Add the over 40 restaurants, movie theaters and retail shops along with the Meadowlands Sports Complex and I feel we have created an entirely new NORTHEAST experience."

Details for NORTHEAST 2009 at the Meadowlands Exposition Center will be available at this weekend's NORTHEAST 2008 show in Suffern, NY.

To find out more information on AASP/NJ, please visit the AASP/NJ website at www.aaspnj.org.

No virus found in this outgoing message.
Checked by AVG.
Version: 7.5.519 / Virus Database: 269.22.0/1344 - Release Date: 3/26/2008 8:52 AM

# LAURENCE H. OLIVE

ATTORNEY AT LAW

Larry@OLIVELAW1.com

Admitted in NJ & NY

460 BLOOMFIELD AVENUE
MONTCLAIR, NEW JERSEY 07042
Tel: (973) 746 – 6623
Fax: (973) 746 – 6625

11 East Broadway
New York, New York 10038
Tel: (212) 608 – 1818
Fax: (212) 608 - 0505

March 27, 2008

Rockland Exposition, Inc.
388 East Main Street          via fax: 845-344-1203
Middletown, NY 10940

Att: David McCarey, III, President

Re: AASP/NJ

Dear Mr. McCarey:

I have been retained by the AASP/NJ and this is in response to your letter of March 25, 2008.

I have reviewed the last written contract of April 26, 2004 and I make the following observations:

1.   The Rockland Exposition agreed to promote, manage and operate the Northeast Regional Auto Body/Automotive Trade Show.  This does not include ownership of show or the name, which is clearly owned by AASP-NJ;

2.   The contract has expired;

3.   You have been notified that the upcoming event will be the last one held through your company for the present and foreseeable future;

Accordingly, you are on notice that you may not interfere with the actions of my client at the show, nor may you represent or attempt to promote the show at your site for the year 2009 or any future years.  This includes inaccurate representations made to existing or prospective vendors and participants, as well as misleading and confusing potential participants by creating a similar and therefore competing trade show, and using a name that is similar to the *Northeast Regional Autobody/Automotive Trade Show*.

Moreover, my client is free to advertise and promote their 2009 show at their new location without any interference from you, your agents, employees or representatives.  Should there be any form of misconduct on your behalf, you and your company will be subject to a lawsuit including, but not limited to tortious interference with contractual rights, interference with business relations, trade name infringement, defamation, among other claims.

Rockland Exposition, Inc.

March 27, 2008

Page Two


Moreover, my client is free to advertise and promote their 2009 show at their new location without any interference from you, your agents, employees or representatives. Should there be any form of misconduct on your behalf, you and your company will be subject to a lawsuit including, but not limited to tortious interference with contractual rights, interference with business relations, trade name infringement, defamation, among other claims.


Please be guided accordingly.



Yours very truly,

LAURENCE H. OLIVE



Cc: AASP/NJ

# AUTOMOTIVE SERVICE ASSOCIATION of NEW JERSEY
## PRESENTS THE 13th ANNUAL

# AUTOMOTIVE CONGRESS & TRADE SHOW



# ACTS   APRIL 20 - 21, 1990

## ROCKLAND COMMUNITY COLLEGE FIELD HOUSE
### HUGE NEW 500 BOOTH INDOOR LOCATION

**EXPANDED EQUIPMENT DISPLAYS WITH THE MOST ADVANCED TECHNOLOGY AND SERVICES**

Case 7:08-cv-07069-KMK    Document 1-9    Filed 08/08/2008    Page 2 of 6

# THE 13th ANNUAL NORTHEAST
# AUTOMOTIVE CONGRESS and TRADE SHOW
## ROCKLAND COMMUNITY COLLEGE - COLLEGE RD. - SUFFERN, NY
### FRIDAY, APRIL 20    6 - 11 P.M. – SATURDAY, APRIL 21    10 - 5 P.M

# THE UNIQUE OPPORTUNITY

In major cities throughout the country, Automotive Trade Shows have long been the industries staple promotional event, drawing the trade in record numbers and providing exhibiting companies with thousands of dollars in direct sales, superb exposure, and a year's worth of solid leads. The Rockland College Field House has sufficient exhibit space, parking and allows the exhibitor the freedom to erect his own display. This is the best opportunity to participate in a major Automotive Repair and related Equipment Exposition.

# SUFFERN, N.Y.

## NORTHEAST CROSSROADS

The Rockland Community College is located on College Road, off Route 59 between Suffern and Spring Valley, N.Y. It is also off Interstate 95 and 287 - end of the New Jersey Parkway connecting N.J. Turnpike and Interstate 80. New York Thruway Exit 14B Airmont Road.

# INVITED TO EXHIBIT

All companies (manufacturers, distributors, and dealers) involved in the selling of equipment, supplies, and services for the autobody and repair industry as well as the related automotive equipment and services.

| | |
|---|---|
| Aftermarket Accessories | Infra-Red Heating Systems |
| Car Rentals/Office Equipment | Insurance/Benefit Packages |
| Collision Repair Supplies | Lifts/Jacks/Hoist Equipment |
| Computer Equipment Software | OEM Equipment/Safety Items |
| Diagnostic Testing Equip. | Paint Mixing Systems |
| Environmental Safety Equip. | Regulations/Industry Publications |
| Fire Suppression Systems | Service/Repair/Crash Manuels |
| Frame Straighten Machines | Towing & Recovery Equipment |
| Hand/Power Tools | Vac/Steam Cleaning Systems |
| High/Low Pressure Sprayers | Wheel Alignment/Balancing |

# RCC FIELD HOUSE

## BEST BUILDING

The Rockland College Field House is a 100,000 square foot heated, lighted comfort-controlled indoor building where everyone parks free. There are no pillars or obstruction on the arena floor. Easy access in and out of the building by way of overhead doors. Every exhibitor is in the same room.

# NO LABOR RESTRICTIONS

Unlike most other possible show facilities, the Rockland Field House will allow exhibitors to unload their exhibit material themselves and to erect their own displays. Management will have an official show decorator firm available for those who wish to rent booth furnishings. This option is solely at the choice of the exhibitor.

# OPEN OPPOSITE PAGE 

# JOIN WITH THE BEST OF COMPANIES

# EXHIBIT AT THIS PRESTIGIOUS SALES EVENT

## # 1  MAIN GOAL    TO SELL PRODUCT, EQUIPMENT AND RELATED SERVICES.





- BUILD PRODUCT AWARENESS AND RECOGNITION
- SHOWS DEVELOP BUYING MOODS - SEE OTHERS BUY
- HELP PROSPECTS FIND SOLUTIONS TO THEIR PROBLEMS
- INTRODUCE NEW SERVICE AND PROGRAMS
- DEVELOP PERSONAL RELATIONSHIPS
- PERSONALIZED SALE PRESENTATION TO BUYERS
- COLLECT LEADS FOR OFF TIME
- BUYERS COME TO YOU
- EFFICIENT ENVIRONMENT - TIME REDUCE
- CUSTOMERS IDENTIFY WITH SALES PEOPLE
- INTRODUCE NEW PERSONNEL

- **MEET MORE CUSTOMERS FACE TO FACE THAN IN ANY OTHER TYPE OF PROMOTION!**

- **ACHIEVE THOUSANDS OF DOLLARS IN DIRECT SALES SUPERB EXPOSURE AND A YEAR'S WORTH OF SOLID LEADS.**

- **MOST COST EFFECTIVE METHOD OF INCREASING YOUR MARKET SHARE!**



| **18%** | OF THE NATIONS POPULATION ARE WITHIN A TWO HOURS DRIVE OF THIS AUTOMOTIVE CONGRESS & TRADE SHOW |

## MASSIVE ADVERTISING CAMPAIGN FOR SHOW ATTENDEES

- Monthly Trade Magazines/Publications
- Direct Mail to End User
- Direct Mail through Jobbers/Vendors/Warehouses
- Distributed by monthly mailings/billings through participating exhibitors



- Over 300 Exhibitor Booths
- 150 Participating Companies
- Huge Equipment Display Areas
- Full Educational Seminar Program

# COMMERCIAL SPACE AVAILABLE



# EVERYONE IS IN THE SAME ROOM

## NO PILLARS · NO DIVIDERS · ALL ON THE SAME FLOOR
### · OVER 300 BOOTHS ·

**TAKE ADVANTAGE-PUT YOUR COMPANY IN FRONT OF MORE PROSPECTS**

## FRIDAY, APRIL 20 – SATURDAY, APRIL 21
### 6 - 11 P.M.                    10 - 5 P.M.



| MOVE-IN | | MOVE-OUT |
|---|---|---|
| **FRIDAY, APRIL 20** | **HOW TO RESERVE YOUR SPACE** | **SATURDAY, APRIL 21** |
| **7 A.M. - 5 P.M. ONLY** | | **5 P.M. - 8 P.M.** |

The price for a display booth includes an 8ft. high dark blue back drop and 3ft. high side dividers. The standard booth size is 10' x 10'. For a corner location, a minimum of two booths must be booked. Each exhibitor is also supplied with a booth identification sign (6" x 36"). Exhibitors may rent booth furnishings such as tables, chairs, and carpet from the official show decorating service or supply their own. All electrical service must be ordered in advance through the decorating service according to the wattage required. All sharp or non-rounded equipment must have plywood under the points that would touch the floor. Plywood pads are supplied by the show.

**For booth pricing, or information call Dave McCarey – (914) 343-2772 or 1-800-223-4648**

# AVOID THAT SELLOUT DISAPPOINTMENT



# INCREASE YOUR MARKET SHARE

# ACTS '90

## APRIL 20 - 21, 1990

## THE MOST ADVANCED EQUIPMENT IN THE INDUSTRY



## THE LATEST TECHNOLOGY, SERVICES & RELATED SUPPLIES



## FULL SLATE OF EDUCATIONAL SEMINARS

**FRIDAY EVENING AND SATURDAY**

 ARE YOU LOSING SALES ?

# ACTS - '90

**AUTOMOTIVE CONGRESS & EQUIPMENT TRADE SHOW**

## FRIDAY, APRIL 20 – SATURDAY, APRIL 21
### 6 - 11 P.M.                    10 - 5 P.M.

---

**THINK PROGRESSIVE**

**100,000 Sq. Ft. of the Latest Technology and the most advanced**

- • EQUIPMENT•
- • SUPPLIES •
- • SERVICES •
- • EDUCATIONAL • SEMINARS

# DISPLAY Your Product



## EVERYONE IS IN THE SAME ROOM
# RESERVE YOUR SPACE EARLY!

**SHOW INFORMATION**
**Coordinator Dave McCarey**

**Rockland Exposition, Inc.**
529 North Street
Middletown, N.Y. 10940

**914-343-2772        800-223-4648**

**ROCKLAND COMMUNITY COLLEGE, SUFFERN, NY**

EXIT 14B NYS THRUWAY – 8 MILES WEST OF TAPPAN ZEE BRIDGE
ON THE NEW JERSEY BORDER – PLENTY OF FREE PARKING

100,000 Square Foot Field House
40' Ceilings - No Pillars
Everyone is in the Same Room
Well Lighted - Climate Controlled
No Labor Restrictions - Free Parking
Rubber Coated Gym Floor - Walking Comfort

# AUTOMOTIVE SERVICE ASSOCIATION of NEW JERSEY
## PRESENTS THE 14th ANNUAL

# NORTHEAST '91
# AUTOBODY / AUTOMOTIVE TRADE SHOW



# APRIL 12, 13, 14, 1991

## ROCKLAND COMMUNITY COLLEGE FIELD HOUSE
(Right on the border of New York and New Jersey) Suffern, New York
### Full Slate of Educational Seminars for Autobody and Automotive Repair
### EXPANDED EQUIPMENT DISPLAYS WITH THE MOST ADVANCED TECHNOLOGY AND SERVICES

Case 7:08-cv-07069-KMK    Document 1-10    Filed 08/08/2008    Page 2 of 6

# THE 14th ANNUAL NORTHEAST 1991
# AUTOBODY / AUTOMOTIVE TRADE SHOW
## ROCKLAND COMMUNITY COLLEGE - COLLEGE RD. - SUFFERN, NY
### APRIL 12, 13, 14, 1991
### Friday, 6 – 11 P.M. • Saturday, 10 – 5 P.M. • Sunday, 10 – 3 P.M.

## A UNIQUE OPPORTUNITY

In major cities throughout the country, Autobody / Automotive Trade Shows have long been the industries staple promotional event, drawing the trade in record numbers and providing exhibiting companies with thousands of dollars in direct sales, superb exposure, and a year's worth of solid leads. The Rockland College Field House has sufficient exhibit space, parking and allows the exhibitor the freedom to erect his own display. This is the best opportunity to participate in a major Regional / Automotive Repair and related Equipment Exposition.

## SUFFERN, N.Y.

### NORTHEAST CROSSROADS

The Rockland Community College is located on College Road, off Route 59 between Suffern and Spring Valley, N.Y. It is also off Interstate 95 and 287 – end of the New Jersey Parkway connecting N.J. Turnpike and Interstate 80. New York Thruway Exit 14B Airmont Road.

## RCC FIELD HOUSE

### BEST BUILDING

The Rockland College Field House is a 100,000 square foot heated, lighted comfort-controlled indoor building where everyone parks free. There are no pillars or obstruction on the arena floor. Easy access in and out of the building by way of ground level overhead doors. Every exhibitor is in the same room.

## INVITED TO EXHIBIT

All companies (manufacturers, distributors, and dealers) involved in the selling of equipment, supplies, and services for the autobody and automotive repair industry as well as the related automotive equipment and services.

Aftermarket Accessories
Car Rentals/Office Equipment
Collision Repair Supplies
Computer Equipment Software
Diagnostic Testing Equip.
Environmental Safety Equip.
Fire Suppression Systems
Frame Straighten Machines
Hand/Power Tools
High/Low Pressure Sprayers

Infra-Red Heating Systems
Insurance/Benefit Packages
Lifts/Jacks/Hoist Equipment
OEM Equipment/Safety Items
Paint Mixing Systems
Regulations/Industry Publications
Service/Repair/Crash Manuels
Towing & Recovery Equipment
Vac/Steam Cleaning Systems
Wheel Alignment/Balancing

## NO LABOR RESTRICTIONS

Unlike most other possible show facilities, the Rockland Field House will allow exhibitors to unload their exhibit material themselves and to erect their own displays. Management will have an official show decorator firm available for those who wish to rent booth furnishings. This option is solely at the choice of the exhibitor.

## OPEN OPPOSITE PAGE 

# JOIN THE BEST OF COMPANIES

# EXHIBIT AT THIS PRESTIGIOUS SALES EVENT

## 1991 TRADE SHOW SCHEDULE

**THURSDAY, APRIL 11     LARGE EQUIPMENT MOVE-IN     8 A.M. – 5 P.M.**

This includes all heavy display items that need to be trucked into the building, plus displays requiring forklift service. Important NOTE: This is the only day delivery vehicles will be allowed **inside** the Field House and the only time **FORKLIFT SERVICE** will be available during move-in. All display items are to be set inside your display area by 5 P.M., so the aisles may be carpeted.

**FRIDAY, APRIL 12     SMALL EQUIPMENT MOVE-IN     8 A.M. – 5 P.M.**

Hand carried items for smaller displays. All displays to be completed by 5 P.M.
(No forklift service – No heavy equipment)  •  (No vehicles allowed inside today)

**TRADE SHOW OPEN     6 P.M. – 11 P.M.**

**SATURDAY, APRIL 13     TRADE SHOW OPEN     10 A.M. – 5 P.M.**

**SUNDAY, APRIL 14     TRADE SHOW OPEN     10 A.M. – 3 P.M.**

**MOVE-OUT FOR ALL DISPLAY MATERIAL     3 P.M. – 6 P.M.**

**IMPORTANT NOTE:** FORKLIFT SERVICE AND DELIVERY TRUCKS ALLOWED INSIDE AFTER 3:45 P.M.



**18%** OF THE NATIONS POPULATION ARE WITHIN A TWO HOURS DRIVE OF THIS AUTOBODY / AUTOMOTIVE TRADE SHOW

## MASSIVE ADVERTISING CAMPAIGN TO QUALIFIED SHOW ATTENDEES



- Monthly Trade Magazines/Publications
- Direct Mail to End User
- Direct Mail through Jobbers/Vendors/Warehouses
- VIP Program
  Distributed by monthly mailings/billings through participating exhibitors
- Over 300 Exhibitor Booths     •  Huge Equipment Display Areas
- 150 Participating Companies     •  Full Educational Seminar Program

# COMMERCIAL SPACE AVAILABLE

# EVERYONE IS IN THE SAME ROOM
## NO PILLARS - NO DIVIDERS - ALL ON THE SAME FLOOR
### •OVER 300 BOOTHS•

**TAKE ADVANTAGE-PUT YOUR COMPANY IN FRONT OF MORE PROSPECTS**

## FRIDAY, APRIL 12 – SATURDAY, APRIL 13 – SUNDAY, APRIL 14
## 6 - 11 P.M.            10 - 5 P.M.            10 - 3 P.M.



## RESERVE YOUR SPACE EARLY!

The price for a display booth includes an 8 ft. high back drop and 3 ft. high side dividers. The standard booth size is 10" x 10". For a corner location, a minimum of two booths must be booked. Each exhibitor is also supplied with a booth identification sign (6" x 36"). Exhibitors may rent booth furnishings such as tables, chairs, and carpet from the official show decorating service or supply their own. All electrical service must be ordered in advance through the decorating service according to the wattage required. All sharp or non-rounded equipment must have plywood under the points that would touch the floor. Plywood pads are supplied by the show. This is the Exhibitor's responsibility.

**For booth pricing, and information call Dave McCarey -- (914) 343-2772 or 1-800-223-4648**

# AVOID THAT SELLOUT DISAPPOINTMENT

## INCREASE YOUR MARKET SHARE

# NORTHEAST '91
## AUTOBODY / AUTOMOTIVE TRADE SHOW

### APRIL 12, 13, 14, 1991

## THE MOST ADVANCED EQUIPMENT IN THE INDUSTRY



## THE LATEST TECHNOLOGY, SERVICES & RELATED SUPPLIES



## FULL SLATE OF EDUCATIONAL SEMINARS

### FRI. EVENING SAT. & SUN.



 **ARE YOU LOSING SALES ?**

# NORTHEAST - '91

**AUTOBODY / AUTOMOTIVE TRADE SHOW**

## FRIDAY, APRIL 12 – SATURDAY, APRIL 13 – SUNDAY, APRIL 14
6 - 11 P.M.                    10 - 5 P.M.                    10 - 3 P.M.

---

THINK PROGRESSIVE

100,000 Sq. Ft. of the Latest Technology and the most advanced

• **EQUIPMENT** •

• **SUPPLIES** •

• **SERVICES** •

• **EDUCATIONAL** • **SEMINARS**

# DISPLAY Your Product



## EVERYONE IS IN THE SAME ROOM
# RESERVE YOUR SPACE EARLY!

**SHOW INFORMATION**
Coordinator Dave McCarey

**Rockland Exposition, Inc.**
529 North Street
Middletown, N.Y. 10940

**914-343-2772        800-223-4648**

**ROCKLAND COMMUNITY COLLEGE, SUFFERN, NY**

EXIT 14B NYS THRUWAY – 8 MILES WEST OF TAPPAN ZEE BRIDGE
ON THE NEW JERSEY BORDER – PLENTY OF FREE PARKING

100,000 Square Foot Field House
40' Ceilings - No Pillars
Everyone is in the Same Room
Well Lighted - Climate Controlled
No Labor Restrictions - Free Parking
Rubber Coated Gym Floor - Walking Comfort
Ground Level Move-In
4 Large Overhead Doors

*Participate in "The largest and best attended regional show of it's kind in the country"*

# ASA / NJ's                    20th Annual
# NORTHEAST 97' REGIONAL
# AUTOBODY / AUTOMOTIVE TRADE SHOW

## MARCH 21, 22, 23, 1997

### \* Over 400 Booths      \* 140 *Plus* Exhibiting Companies

"Dollar for Dollar, your best sales and marketing investment.
See your returns immediately" over 7,600 registered attendees
at our 1996 event.

## \* Huge Equipment Display Areas

Full Size Spraybooths * Paint Mixing Systems
Computer Equipment/Software * High/Low Pressure Sprayers
Aftermarket Accessories * Collision Repair Equipment
Diagnostic Testing Equipment * Wheel Alignment Equipment
Industry Publications * Related Services * Insurance Packages
Frame Straightening Machines * Environmental Safety Equip.
Parts * Power Tools * Lifts, Jacks, Hoist Equipment
Tire Equipment * Brake Lathes



## \* Full Educational Seminar Program

Free to All Registered Attendees    (Except I-Car)



## \* VIP Pass Program

Four Color Attendee Mailings to over 45,000 Registered
Autobody / Automotive Repair Shops throughout the Northeast,
Offering Free Admission to Trade Show and all Seminars

*

Direct Mail through Jobbers/Vendors/Warehouses

*

Exhibitor VIP Program through Mailings/Billings/Deliveries

## \* Prime Location

Rockland Community College Arena (100,000 sq. ft. clear span), easy access from major highways Suffern, New York
Just off NYS Thruway (Exit 14B) • 4 miles from end of Garden State Parkway
3 miles from Route 17/Mahwah and Rt. 287 • 8 miles west of Tappan Zee Bridge

**This event is managed by Rockland Exposition, Inc. For more information contact:
Dave McCarey III - Show Coordinator   800-233-4648 or 914-343-2772**

# EXHIBITOR FRIENDLY

*THIS EVENT IS*

Free Blacktop Parking * Drive in Unloading
100,000 Sq. Ft. Arena * Clear Span * No Pillars
No Hassle Atmosphere (work directly with show management)
24 Hour Exposition Security * Broadloom Carpeted Show Aisles
Pipe and Drape Exhibitor Booth Dividers
Plastic Exhibitor Booth Identification Sign
No Labor Restrictions (set up your own display)
Large overhead Doors (max. height 12' 4")
Excellent Hotel Rates/Services
Located Near Major Highways (right on NY-NJ Border)



## NORTHEAST REGIONAL AUTOBODY / AUTOMOTIVE TRADE SHOW
### 1997 Exhibitor Space – Rate Sheet

| | | | |
|---|---|---|---|
| 10' X 10' | $950.00 | 20' X 30' | $4,425.00 |
| 10' X 15' | $1,425.00 | 20' X 40' | $5,675.00 |
| 10' X 20' | $1,750.00 | 30' X 30' | $6,250.00 |
| 10' X 30' | $2,475.00 | 20' X 50' | $6,825.00 |
| 10' X 40' or 20' X 20" | $3,200.00 | 20' X 60' or 30' X 40" | $7,975.00 |
| 10' X 50' | $3,825.00 | 20' X 80' | $10,200.00 |

(Note: For a corner location, a minimum of two booths must be booked)

**For more information contact:**
**Dave McCarey III • Show Coordinator**
**800-223-4648 or 914-343-2772**

# 2009 TRADE SHOW SCHEDULE



**THURSDAY, MARCH 19TH**
**LARGE EQUIPMENT MOVE-IN** ........ 8:00AM–5:00PM
This includes all heavy display material that cannot be hand-carried or hand-dollied into the building.

**FRIDAY, MARCH 20TH**
**SMALL EQUIPMENT MOVE-IN** ........ 8:00AM–5:00PM
Hand-carried items for smaller displays.

**TRADE SHOW OPEN** ........ 6:00PM–11:00PM

**SATURDAY, MARCH 21ST**
**TRADE SHOW OPEN** ........ 10:00AM–5:00PM

**SUNDAY, MARCH 22ND**
**TRADE SHOW OPEN** ........ 10:00AM–3:00PM
**MOVE-OUT FOR ALL**
**DISPLAY MATERIAL** ........ 3:00PM–6:00PM

---

## ON-SITE SERVICES

**PREFERRED LOCATION:**

- 5 miles from Manhattan
- Accessible to all major interstate arteries, including New Jersey Turnpike and Garden State Parkway
- 5 Minutes from Newark Liberty International Airport and Teterboro Jetport
- New York/New Jersey Transit stops located at the front entrance of the facility
- 5,000 free parking spaces
- Parking for exhibitors is located in the rear of the building and is easily accessible from all major routes

**COST EFFECTIVE:**

- Six national hotel chains, Embassy Suites, Holiday Inn, Hampton Inn, Hyatt Place, Courtyard Marriott and MainStay Suites are within walking distance
- 1,500 additional rooms within a five-mile radius
- Harmon Meadow hotel rates average thirty percent lower than New York City

---

## INVITED TO THE EXHIBIT

Aftermarket Accessories
Air Cleaning Equipment
Air Compressors
Airbag Services
Automotive Chemicals
Automotive Internet Services
Automotive Refinishing Products
Automotive Replacement Parts
Business Services
Car Rentals/Office Equipment
Certification/Training Services
Collision Repair Supplies
Computer Equipment/Software
Detailing Equipment/Products
Diagnostic Testing Equipment
Environmental Safety Equipment
Fire Suppression Systems

Frame Machines
Hand/Power Tools
High/Low Pressure Sprayers
Infrared Heating Systems
Insurance/Benefit
Lifts/Jacks/Hoist Equipment
OEM Equipment/Safety Items
Paint Mixing Systems/Equipment
Regulations/Industry Publications
Service/Repair/Crash Manuals
Spray Booths/Prep Stations
Towing & Recovery Equipment
Uniforms/Embroidered Clothing
Vac/Steam/Cleaning Systems
Welding Equipment
Wheel Alignment/Balancing
Wheel Repair

---

### • GREAT ENTERTAINMENT:

- The Exposition Center is surrounded by a variety of over 40 restaurants, movie theaters and retail shops
- The Meadowlands Sports Complex is just three miles away and includes Giants Stadium the Izod Center and the Meadowlands Racetrack





---

# 2009 EXHIBITOR RATE SHEET

| | | |
|---|---|---|
| 10'x10' ........ $1,350 | 20'x30' ........ $6,200 | |
| 10'x15' ........ $2,000 | 20'x40' ........ $7,950 | |
| 10'x20' ........ $2,425 | 30'x30' ........ $8,750 | |
| 10'x30' ........ $3,425 | 20'x50' ........ $9,650 | |
| 10'x40' ........ $4,400 | 20'x60' or 30'x40' ........ $11,300 | |
| 10'x50' or 20'x20' ........ $5,300 | 20'x80' or 30'x40' ........ $14,600 | |

*(Please Note: For a corner location, a minimum of two booths must be booked)*

## RESERVE YOUR SPACE EARLY!

The price for a display booth includes an 8ft. backdrop and 30" high side dividers. The standard booth size is 10'x10'. For a corner location, a minimum of two booths must be booked. Each exhibitor is also supplied with a booth identification sign (6'x32'). Exhibitors may rent booth furnishings such as tables, chairs and carpet from the official show decorating service, or supply their own. All electrical service must be ordered in advance through the decorating company, according to the wattage required.

**SALES INFORMATION:** E-mail: sales@mexexpo.com
Call Toll Free: (888) 403-3976 or locally (201) 330-1773





## A UNIQUE OPPORTUNITY

In major cities throughout the country, Autobody/Automotive Trade Shows have long been the industry's staple promotional event, drawing the trade in record numbers and providing exhibiting companies with thousands of dollars in direct sales, superb exposure, and a year's worth of solid leads. The Meadowlands Exposition Center (MEC) has sufficient exhibit space and parking and allows the exhibitor the freedom to erect their own display. This is the best opportunity to participate in a major Regional Autobody/Automotive Repair and Related Equipment Exposition.

## ABOUT THE MEADOWLANDS EXPOSITION CENTER

In addition to offering a professional staff of trade show specialists and facilities to match, the Meadowlands Exposition Center (MEC) is conveniently located just minutes outside of New York City. The center offers 61,000 sq. ft. of exhibit space, with five additional meeting rooms and a banquet capacity of 5,000. With Newark Liberty International Airport so close by, and a variety of nationally acclaimed hotels right around the corner, MEC offers one of the most complete and convenient facility packages in the Northeast.

*Participate in "the largest and best attended regional show of its kind in the country"*



MEADOWLANDS EXPOSITION CENTER
at Harmon Meadow
355 Plaza Drive  Secaucus, NJ 07094
Toll Free: (888) 400-3976 or Local: (201) 330-7773
Fax: (201) 330-1172
www.mecexpo.com

*AASP/New Jersey Presents*

*Meadowlands Exposition Center at Harmon Meadow, Secaucus, NJ*



NORTHEAST 2009

32ND ANNUAL
NORTHEAST 2009 REGIONAL
Autobody/Automotive Trade Show
March 20th, March 21st and March 22nd







**32nd ANNUAL NORTHEAST 2009 REGIONAL
Automotive Repair Trade Show**

*Participate in "the largest and best attended regional show of its kind in the country"*

# RESERVE YOUR 2009
# SPACE EARLY!

**AASP/New Jersey will be moving to the Meadowlands Exposition Center in 2009. This cost-effective facility will allow for more exhibitors and attendees, while providing you with a professional staff of trade show specialists.**

**Conveniently located just five miles from Manhattan!  The center offers 61,000 square feet of prime exhibit space and free parking and allows the exhibitor the freedom to erect their own display.**

*Presented By*



**NEW JERSEY**
ALLIANCE OF AUTOMOTIVE SERVICE PROVIDERS
*NJ's Largest Assoc. of Collision and Mechanical Repairers*

*Surrounded by five host hotels as well as over forty retail shops and restaurants. Easily accessible by all major routes and public transportation.*

*Visit us at the AASP/NJ Booth at this year's show for details or call 201-330-7773!*

**355 Plaza Drive • Secaucus, NJ 07094 • 888-400-3976 or 201-330-7773**
**sales@mecexpo.com   www.mecexpo.com**

**NEWS**
▶ Front Page
▶ Older Headlines
▶ Past Features
▶ Items of Note
▶ Industry Calendar
▶ Search News

**USER LINKS**
▶ Log In
▶ Log Off
▶ Register
▶ Subscribe
▶ Renew Subscription
▶ My Account

**HELP & INFO**
▶ About Us
▶ Privacy Policy
▶ Contact Info

⏺ Help & Frequently
   Asked Questions



CollisionWeek News

# CollisionWeek

CollisionWeek News, Statistics, and Trend Analysis

**Mon, 21 Apr 2008**

## AASP/NJ Explains NORTHEAST Show Move to Meadowlands ©2008 by CollisionWeek. All rights reserved.

No part of this publication may be reproduced or transmitted by any means without permission in writing from the publisher.

The Alliance of Automotive Service Providers of New Jersey (AASP/NJ) announced late last month that they would be moving their 32nd annual NORTHEAST Automotive Trade Show to the Meadowlands Exposition Center in Secaucus, NJ.

Recently, AASP/NJ President Tom Elder explained the move and the high expectations AASP/NJ has for the 2009 show.

Q: AASP/NJ has held its NORTHEAST show in Suffern, New York for almost two decades. Why change now?

Tom Elder: First let me give you some background on the show. We first ran the event in the mid-'70s as a tabletop show for a few of our vendors. One of the Association's founding fathers, George Threlfall, put the whole thing together and it took off immediately. Within a few years, the show had grown so much that we moved to the much bigger Hilton in Secaucus and then the Sheraton in the Meadowlands.

Q: Why did you move to Suffern?

TE: By that time, around 1990, we had outgrown the Sheraton and we began looking for a bigger facility. Back then, the exposition center industry was just beginning so we really didn't have anywhere to go without traveling a great distance. We met up with Rockland Expositions and Dave McCarey. He brought us to the Suffern Arena and it was certainly big enough. We just didn't know if our attendees would travel to a facility that far away. So we hired Rockland Expositions to manage the show for us.

Q: Obviously with the success of the show, you were able to get attendees to travel.

TE: Initially it was tough, but through AASP/NJ's persistence, we were able to get automotive professionals to come up and check out the show. The first year in Suffern, I believe we only had about 10 more vendors, so we were concerned at the beginning. But

after a few years, the show took off. It became the East Coast focus for the collision and mechanical repair industry.

Q: So why the move back to New Jersey?

TE: Over the last four or five years, we have seen a drop in attendance and in booth sales. We spent countless hours looking for solutions and coming up with new ideas to turn that around. An example of that was giving away a Harley, which we did the last two years. In spite of the buzz that the Harley generated, growth didn't happen. This year's attendance was below expectations. Last year, we did a CSI of vendors who had stopped coming to the show and the top two reasons they gave for dropping out were attendance and location. They felt Suffern was too remote.

Q: Did the relationship with Rockland Expositions change?



TE: As I said, we had a great run with Rockland and Dave McCarey. But last year we sat down with them and requested a new marketing strategy. Since they were the managers of the show, and they controlled the marketing and the sales, we wanted some new ideas from them on how to improve attendance.

Q: Did Rockland come up with anything?

TE: They made some minor changes but it was the same venue with basically the same approach. The poor result is unacceptable to AASP/ NJ and our vendors. It was time to move on.

Q: How did you decide on the Meadowlands?

TE: We looked around and met with a few different exposition centers and what we found was that things had changed dramatically since we had moved to Suffern. First of all, due to the competition among the exposition center industry, prices had come down and the labor costs were nowhere near what we had heard they'd be. Once we met with the Meadowlands and saw their state-of-the-art facility and location, we were very interested. We attended a few shows at the site and came away extremely impressed. Everything about the location was a positive. Parking surrounds the facility. Five hotels are within walking distance. Restaurants, shops and bars are everywhere. They have the racetrack and the arena. A new state-of-the-art theme park, Xanadu, will be opening a few months prior to our show. And it's five miles from the heart of New York City. There are so many attractive things about the location; we felt it would be foolish not to.

Q: What about attendees?

TE: We contacted a mailing house to find out how many shops were within a 30-mile area of both the Meadowlands and Suffern. They reported there are approximately 1,200 shops within a 30-mile radius of Suffern. There are almost 10,000 shops within the same distance to the Meadowlands! That's not even including all of Central and South Jersey, areas in which shops have told us Suffern was just too far. Nor does it include the thousands of shops in the boroughs of New York or shops in Massachusetts, New York State, Pennsylvania, Connecticut and other states up and down the East Coast. At the Meadowlands, access is simple from everywhere in the country. It is five miles from Newark Airport; Interstate 95 runs right past it and every major highway in the state will bring you there. We are going to make NORTHEAST 2009 a must-see show. We expect to triple our attendees from Suffern.

Q: How are you going to market all of these improvements?

TE: We have two great resources to market our show. First, we have hired SGW Marketing to put together a comprehensive marketing plan that will target attendees from the entire Northeast region. SGW's clients include Sony, JVC and New Jersey Travel and Tourism, so we know we have taken a dramatic leap upward in our marketing strategy. We will have a new website, electronic marketing, press releases, online space booking and online promotion; these are things we fought for years for but were never able to get from Rockland Expositions. We also have Greco Publishing, publishers of automotive trade publications throughout the Northeast. They will be making a concentrated effort to promote and feature NORTHEAST 2009 and its vendors in such publications as New Jersey Automotive, New England Automotive Report and Hammer & Dolly throughout the next 12 months.

Q: What about the rumors of a competing show at the same time?

TE: I'd like to clear this up once and for all. AASP/NJ is a non-profit association that is made up of over 450 automotive professionals. AASP/NJ's NORTHEAST Automotive Trade Show is the only show with a 32-year history of strong industry sponsorship and support. All of the profits go right back into improving and educating our industry, helping our members become better and successful businesspeople. It allows the Association to hire lobbyists to fight for our rights as an industry. It allows us to hold meetings to inform and educate our industry. It allows our industry to have a strong voice; not only in Trenton but also across the country. I don't know of any vendor who would rather support an independent company instead of an association who fights for and represents the industry purchasing their products. AASP/NJ has been giving back to the industry through the NORTHEAST show for 32 years. Vendors know and support

the Association and the goodwill they generate by participating with our members and the industry. The only place to exhibit to reach industry professionals continues to be at the 32nd annual NORTHEAST Automotive Trade Show.

To find out more information on AASP/NJ and NORTHEAST 2009, please visit the AASP/NJ website at www.aaspnj.org.

cw

Back to CollisionWeek front page.

Send a Comment to the Editor on this story. Click Here
Web Site Problem? Questions? Click Here
CollisionWeek Terms of Use
© Copyright 1999-2008 CollisionWeek

**NEWS**
- Front Page
- Older Headlines
- Past Features
- Items of Note
- Search News

**USER LINKS**
- Log In
- Log Off
- Register
- Subscribe
- Renew Subscription
- My Account

**HELP & INFO**
- About Us
- Privacy Policy
- Contact Info



# CollisionWeek

CollisionWeek News, Statistics, and Trend Analysis

**Tue, 27 May 2008**

## AASP/NJ Launches New Web Presence for NORTHEAST Show

©2008 by CollisionWeek. All rights reserved. No part of this publication may be reproduced or transmitted by any means without permission in writing from the publisher.

Help & Frequently Asked Questions



CollisionWeek News

The Alliance of Automotive Service Providers of New Jersey (AASP/NJ) announced the launch of a new Web site for their annual tradeshow event scheduled to be held at the Meadowlands Exposition Center (MEC) in March 2009. The OFFICIAL NORTHEAST 2009 site is www.aaspnjnortheast.com.

The new site offers information about the NORTHEAST show and AASP/NJ. An integral part of the site is the interactive floor plan, which allows vendors to see which booths have been booked and which locations best serve their needs. Also included is AASP/NJ's advanced NORTHEAST marketing plan that was developed to entice the over 75, 000 automotive repair shops in the NORTHEAST to attend the Meadowlands show.

The site also features links to nearby attractions such as the Meadowlands Sports Complex, New York City, Broadway and the new theme park, Xanadu.

AASP/NJ President Tom Elder said, "For the first time in 32 years, we can say the show has a 21st century online presence. This forward-thinking type of site is what AASP/NJ has been attempting to get from our show producers for the last decade. Although it took some serious changes to get to where we wanted to go, I think one look at the website justifies everything. We are proud to be represented by www.aaspnjnortheast.com."

"Our priority in moving to the Meadowlands was to attract as many automotive professionals as we could to a place where they would want to go, where there are so many advantages that it would be a mistake to go anywhere else," Elder continues. "One visit to the site and you'll see we are on our way to accomplishing that."

**Back to CollisionWeek front page.**

Send a Comment to the Editor on this story. Click Here
Web Site Problem? Questions? Click Here
CollisionWeek Terms of Use
© Copyright 1999-2008 CollisionWeek

**NEWS**
► Front Page
► Older Headlines
► Past Features
► Items of Note
► Search News

**USER LINKS**
► Log In
► Log Off
► Register
► Subscribe
► Renew Subscription
► My Account

**HELP & INFO**
► About Us
► Privacy Policy
► Contact Info

Help & Frequently
Asked Questions



CollisionWeek News, Statistics, and Trend Analysis

Fri, 27 Jun 2008

# AASP NJ Reports Record Vendor Signups Ahead of NORTHEAST Show ©2008

by CollisionWeek. All rights reserved. No part of this publication may be reproduced or transmitted by any means without permission in writing from the publisher.

The Automotive Service Providers of New Jersey (AASP/NJ) report that vendors are signing up at a record pace for the association's 2009 trade show at the Meadowlands Exposition Center in Secaucus, NJ.

"I can't remember having this many exhibitors signed up this early," AASP/NJ President Tom Elder says. "I believe we have over 30 vendors committed to the show and it's only June. The excitement of the move and all of the opportunities the Meadowlands present, I feel, are the main reasons we have seen such an avid interest in the 2009 show."

NORTHEAST 2009 will take place March 20-22, 2009. Among the latest to book their booths are Chassis Liner, Sherwin Williams, Wurth USA, Hunter Engineering and Kent Automotive. Some of the first to sign up for the exposition included Mitchell International, Collision Services, and Hella Inc.



CollisionWeek News

Elder said, "A commitment to AASP/NJ's NORTHEAST 2009 show is a commitment to our industry. We greatly appreciate their support and will do everything we can to promote their allegiance to our industry."

AASP/NJ has been sponsoring the NORTHEAST show for over 30 years. This is the first year the show will be held at the Meadowlands. Organizers are expecting over 200 vendors to sign up and welcome the estimated 9,000 attendees at the Meadowlands in March. "Everything we've done has been with the intent to bring more people to the show," Elder explains.

AASP/NJ's NORTHEAST 2009 will also feature the latest in technical and educational seminars, including I-CAR classes as well as the nationally known SCRS Leadership Conference.

For more information about AASP/NJ's NORTHEAST 2009 show at the Meadowlands visit www.aaspnjnortheast.com.

# MACKEVICH, BURKE & STANICKI

### COUNSELLORS AT LAW
#### 1435 RARITAN ROAD.
#### P.O. BOX 919
#### CLARK, NEW JERSEY 07066-0919

##### (732) 388-2121
##### FAX (732) 388-0330
##### www.mbslawyers.com

JAMES E. MACKEVICH
ROBERT R. STANICKI

MARIANNE ZEMBRYSKI

JAMES M. BURKE
1952-2007

March 31, 2008

Mr. David McCarey, III
President
Rockland Exposition, Inc.
388 East Main Street
Middletown, N.Y. 10940

Re:   Alliance of Automotive Service Providers (AASP) – Rockland Exposition, Inc.

Dear Sir:

I am litigation counsel to AASP/NJ and have been briefed regarding recent communications and events involving my client and your company. I have been requested to advise you as clearly as possible as follows:

1. AASP/NJ has elected to sever its business relationship with Rockland Exposition, Inc. and will not be entering into any agreements with you involving its planned 2009 Trade Show.

2. The mark *Northeast Regional Autobody / Automotive Trade Show* is clearly and unequivocally the property of AASP/NJ and neither that mark nor any variation which would tend to create confusion in the market place is permitted to be used by you for any purpose. I can assure you that my clients will immediately commence litigation if they learn you are violating their property rights.

3. We understand that you have been in contact with vendors and others who have traditionally participated in the AASP Northeast Regional shows for the purpose of inducing them not to participate in AASP's planned 2009 Northeast Regional Show. Those actions alone may potentially subject you to liability. Further, if you make any untrue statements about AASP/NJ's trade show activities, including but not limited to, the cost of a vendor to participate, you will be sued. Please be guided accordingly.

Very truly yours,

MACKEVICH, BURKE & STANICKI

James E. Mackevich
Email JMackevich@MBSLawyers.com
Direct Phone Extension 18

JEM/

# Furgang & Adwar, L.L.P.

## COUNSELORS IN INTELLECTUAL PROPERTY AND ENTERTAINMENT LAW

Philip Furgang
Stephanie Furgang Adwar

Of Counsel:
Sheldon Palmer
Bertrand M. Lanchner

1325 Avenue of the Americas
28th Floor
New York, NY 10019

Telephone: (212) 725-1818
Facsimile: (212) 941-9711

www.furgang.com
info@furgang.com

June 9, 2008

**VIA E-MAIL, CONFIRMATION BY MAIL**

James E. Mackevich, Esq.
Mackevich, Burke & Stanicki
1435 Raritan Road
P.O. Box 919
Clark, New Jersey 07066-0919

RE:   Rockland Exposition, Inc., and Rockland Expo Services, Inc. v.
          Alliance of Automotive Service Providers, New Jersey; Tom Elder,
          Thomas Greco, Glenn Villacari, et al.
          Our File No.   :        10080

Dear Mr. Mackevich:

We are intellectual property lawyers for Rockland Exposition, Inc. (REI), and Rockland Expo Services, Inc (RES). We write in response to your letter of May 20, 2008.

Our clients recently learned that your clients have announced in advertising on the Internet and by solicitation of our clients' exhibitors and vendors that they will present a NORTHEAST 2009 TRADE SHOW in the Meadowlands at precisely the same time as our clients' NORTHEAST trade show is to be presented in nearby Rockland County, New York. A copy of your clients' Internet advertisement is attached. We also attach our client REI's advertisement for the competing trade show.

We are also advised that your clients have taken and are making unauthorized use of our clients' proprietary vendors and attendees lists (Lists) to establish this new competing trade show. In addition, your clients, to advance their wrongful conduct, have infringed upon the copyright our clients in their promotional materials by directly

White Plains  11 Martine Avenue,  Penthouse,  White Plains,  NY  10606  Tel: (914) 428-5300  Fax: (914) 428-0226
West Nyack  Centerock East,  2 Crosfield Avenue,  Suite 210,  West Nyack,  NY  10994  Tel: (845) 353-1818  Fax: (845) 353-1996

P A T E N T S   ◆   T R A D E M A R K S   ◆   C O P Y R I G H T S   ◆   E N T E R T A I N M E N T

Furgang & Adwar, L.L.P.

James E. Mackevich, Esq.
June 9, 2008
Page 2

copying that material in their advertisements and Internet solicitations. Further, your clients have breached their contract with our client REI under which they agreed to participate in our clients' NORTHEAST trade show in 2009.

The unauthorized use of the service mark NORTHEAST, the theft of clients' trade secrets, infringement of their copyrights, breach of contract and interference with contracts and future business activities occasions the writing of this letter.

Our client REI has, for over thirty-five years, been the exclusive owner of the service mark NORTHEAST to identify trade shows in the automotive industry and has, since 1989, presented the NORTHEAST REGIONAL AUTO BODY/AUTOMOTIVE TRADE SHOW under written consecutive two-year contracts with your clients and its predecessors. Under these contracts your clients recognize our client REI's full and exclusive control of the NORTHEAST trade show. Further, your clients have contractually agreed that the Lists are the exclusive property of our clients.

Our clients extensively promote, advertise, and sell their services of running trade shows for the automotive industry for over thirty-five years under their NORTHEAST service mark. The use by your clients of our clients' mark NORTHEAST in advertising, promotion, and the engagement of exhibitors and vendors is causing confusion and significant dilution of our client's right to its mark. Not only are our clients' services being confused with your client's proposed show, but conversely, your clients' services are being confused with our clients' services. As such, your clients' use of NORTHEAST interferes with our clients' business activities, causes our clients great financial harm, and, in addition to compensable financial damage, is producing irreparable harm and damage. Further damage can only be prevented by your clients immediate cessation of their wrongful conduct.

The use by your clients of the identical mark NORTHEAST, especially in view that they have been under contract with our client since 1989 REI, is irrefutable

Furgang & Adwar, L.L.P.

James E. Mackevich, Esq.
June 9, 2008
Page 3

evidence of your clients' wilful intent to infringe and to trade off the goodwill and marketing concepts of our clients and to destroy our client's long-standing trade show businesses in the automotive industry.

It is the policy of our clients to vigorously defend their exclusive rights to their service mark, observance of their exclusive right in their copyrights and trade secrets, and adherence to its contracts. Pursuant to that policy, we have been authorized to take all steps necessary to protect the exclusivity of these rights, including, if necessary, resort to the courts.

Your clients' wrongful and knowing adoption of our client's mark NORTHEAST constitutes wilful trademark infringement and unfair competition under the common law. It also constitutes a violation of § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) as constituting a false designation of origin and false description of representation concerning your clients' services as well as violations of the statutory laws of the States of New York and New Jersey. For these wrongful acts our clients are entitled to an injunction and an award of treble damages and attorneys' fees. Lanham Act § 25 (15 U.S.C. § 1117).

Your clients' wrongful copying and distribution of our clients' advertising constitutes wilful infringement under the Copyright Act (17 U.S.C. § 501). As such our client is entitled to an injunction barring further use of its works (17 U.S. § 502); impoundment of all copies of the infringing works (17 U.S.C. § 503); and actual damages (17 U.S.C. §504(b)).

Accordingly, on behalf of our clients, we demand that your clients:

(a)    Immediately cease and desist from all use of NORTHEAST to advertise, promote, or otherwise produce their 2009 trade show;

(b)    Assign to our clients all contracts entered into with those vendors and exhibitors taken from the Lists;

(c)    Cease and desist immediately from further use of the Lists;

Furgang & Adwar, L.L.P.

James E. Mackevich, Esq.
June 9, 2008
Page 4

(d)     Pay over all moneys obtained and to be obtained from contracts of any
nature with those entities those set forth in the Lists; and

(e)     Pay all sums due under the contract with our client, including all lost
profits.

Unless we receive word from you , in writing, within one (1) week of the date
of this e-mailed, confirmation by mail, letter acknowledging that all commercial
activities with regard to clients' use of NORTHEAST, the Lists, and our clients'
copyrighted works has been halted, and that we shall be immediately provided with
a full accounting, we will be forced to take further legal action to insure that our
client's exclusive rights and contracts are respected.

In commencing this action, we will plead, among other causes of action,
trademark infringement, copyright infringement, theft of trade secrets, tortious
interference with contractual relations, tortious interference with business relations,
and breach of contract.   The action shall be commenced in the United States District
Court for the Southern District of New York, in the United States Courthouse at 300
Quarropas Street, White Plains, New York 10601-4150.   At that time we will make
an application for a temporary restraining order barring your clients' infringing
activities. Unless we resolve this matter immediately, we expect to commence this
action in or about July 7, 2008. As this date approaches, we will advise you of the
specific date and time we plan to approach the court so that you may attend.   You are
further cautioned that any attempt to commence an action in another jurisdiction is
forum shopping for which additional relief and sanctions shall be sought.

Furgang & Adwar, L.L.P.

James E. Mackevich, Esq.
June 9, 2008
Page 5

     Our clients have authorized us to take all steps necessary protect their interests and to seek financial recovery and, as indicated, preliminary and permanent injunctive relief.    If it is necessary, we will take such action forthwith as indicated. Accordingly, we hope to hear from you within the one week period stated above.

     Very truly yours,
     FURGANG & ADWAR, L.L.P.


     PHILIP FURGANG for the firm
     *philip@furgang.com*

PF:cr
Enc.

# MANDEL & PESLAK, LLC
### 80 Scenic Drive, Suite 5
### Freehold, New Jersey 07728
### Phone: (732) 761-1610
### Fax: (732) 761-1611

## FACSIMILE TRANSMISSION COVER SHEET

TO:        Philip Furgang, Esq.        FAX NO.:    (212) 941-9711
               Furgang & Adwar, L.L.P.

FROM:     Arthur M. Peslak, Esq./ Nancy Weinberger

RE:        AASP v. Rockland Exposition, Inc.

DATE:     June 25, 2008

WE ARE TRANSMITTING A TOTAL OF **2 PAGES** INCLUDING THIS COVER SHEET. IF YOU DO NOT RECEIVE ALL INDICATED PAGES, PLEASE CALL (732) 761-1610.

MESSAGE:

     Please see the attached.

     Thank you.

THE INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE IS LEGALLY PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED SOLELY FOR THE USE OF THE PERSONS OR ENTITIES NAMED ABOVE. IF YOU ARE NOT SUCH PERSONS OR ENTITIES, YOU ARE HEREBY NOTIFIED THAT ANY DISTRIBUTION, DISSEMINATION OR REPRODUCTION OF THIS FACSIMILE MESSAGE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS MESSAGE IN ERROR, PLEASE IMMEDIATELY CALL US COLLECT AT (732) 761-1610.



**Attorneys at Law**

*80 Scenic Drive  Suite 5  Freehold, New Jersey 07728*

**732-761-1610**    **fax: 732-761-1611**

www.mandelpeslak.com

Lawrence D. Mandel

*NJ • NY • PA Bars*

Arthur M. Peslak

*NJ • NY Bars*

June 25, 2008

**Via Facsimile and First Class Mail**
Philip Furgang, Esq.
Furgang & Adwar, L.L.P.
1325 Avenue of the Americas, 28thh Floor
New York, New York 10019

Re:   Association of Automotive Service Providers of New Jersey
      v. Rockland Exposition, Inc.
      Our File No.:  AASP-001

Dear Mr. Furgang:

I have recently been retained by the Association of Automotive Service Providers of New Jersey in connection with your client's claims set forth in your letter of June 9, 2008 to Mr. Mackevich.  I am in the process of reviewing your letter and gathering the appropriate facts from my client.  I expect to be able to provide a response to your letter in a couple of days.

Sincerely,

Arthur M. Peslak

AMP/nbw

Arthur M. Peslak (AP-5213)
Lawrence D. Mandel
Mandel & Peslak, LLC
80 Scenic Drive, Suite 5
Freehold, New Jersey 07728
Attorneys for Plaintiff

<div align="center">

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

</div>

| | |
|---|---|
| ASSOCIATION OF AUTOMOTIVE SERVICE PROVIDERS OF NEW JERSEY | CIVIL ACTION NO. _____ |
| Plaintiff, | |
| v. | COMPLAINT AND DEMAND FOR JURY TRIAL |
| ROCKLAND EXPOSITION, INC. and David McCarey, III, | |
| Defendants. | |

Plaintiff, the Association of Automotive Service Providers of New Jersey ("AASP/NJ"), through its attorneys Mandel & Peslak, LLC, hereby allege as follows:

<div align="center">

THE PARTIES

</div>

1.    Plaintiff, Association of Automotive Service Providers of New Jersey ("AASP/NJ") is a trade organization of independent businesses incorporated as a not-for-profit corporation in New Jersey offering automotive collision and repair services having an address of 3633 State Route 33, Post Office Box 734, Neptune, New Jersey 07753.

2.    Upon information and belief, Defendant, Rockland Exposition, Inc., is a New York corporation with an address at 388 East Main Street, Middletown, New York 10940.

3.     David McCarey, III is the President of Defendant Rockland Exposition, Inc. and, upon information and belief, is a resident of the State of New York.

## JURISDICTION AND VENUE

4.     This is a Civil Action arising under the Federal Trademark Act of 1947, as amended, 15 U.S.C. § 1051, *et. seq.*, the common law of the State of New Jersey, the New Jersey Unfair Competition Act, N.J.S.A. § 56:4-1, *et. seq.*, and the New Jersey Trademark Act, N.J.S.A. § 56:3-13.1a, *et. seq.*  This Court has subject matter jurisdiction under the provisions of 15 U.S.C. § 1125, 28 U.S.C. § 1331 and 28 U.S.C. § 1367.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to the claims occurred and a substantial part of property that is the subject of this motion is situated within this judicial district.

## FACTS COMMON TO ALL CAUSES OF ACTION

## BACKGROUND OF PLAINTIFF'S USE OF THE MARK "NORTHEAST"

5.     Since March of 1978, Plaintiff and/or its predecessors in interest have been sponsoring an annual trade show ("the AASP/NJ Annual Trade Show") at which various companies exhibit their goods/services. In addition, the show also provides seminars on current topics of interest to Plaintiff's members. The AASP/NJ Annual Trade Show is tailored to the needs of automotive collision and mechanical repair professionals so as to foster the members' success in the automotive repair industry.

6.     Initially, the AASP/NJ Annual Trade Show was a relatively small event located in Rochelle Park, New Jersey. The original show was primarily a local New Jersey centered event.

- 2 -

The AASP/NJ Annual Trade Show grew quickly in the late 1970's and the venue eventually moved to the Hilton in Secaucus and later the Sheraton in the Meadowlands.

7.    By the mid-1980's, the event became a regional event drawing a significant number of participants and exhibitors from throughout the Northeast United States and not merely from New Jersey.

8.    As early as the 1985 show, Plaintiff's predecessors in interest began referring to its Annual Trade Show as the "Northeast" Autobody Congress and Trade Show. A true copy of a promotional flyer for the 1985 show is attached hereto as Exhibit 1.

9.    Since 1985, Plaintiff and its predecessors in interest have extensively and continuously promoted its "Northeast" trade show through advertising and other means.

10.    The AASP/NJ Annual Trade Show continued to prosper and grow in the late 1980's and eventually outgrew its venue at the Meadowlands Sheraton.

11.    Consequently, Plaintiff began to look for a larger venue for its rapidly expanding trade show.

12.    Several years after it began using the mark NORTHEAST to promote its show, in or about 1990, Plaintiff entered into an agreement with Defendant to manage the AASP/NJ Annual Trade show.

13.    At Defendant's suggestion, Plaintiff moved its show from the Meadowlands to Suffern, New York.

14.    Plaintiff hired Defendant to manage the show for it and to promote the show as a NORTHEAST regional event.

15.    Defendant managed the AASP/NJ Annual Trade Show on an annual basis for Plaintiff pursuant to a series of contracts through the March 2008 trade show. From 1990 until March, 2008, the show was held in Suffern, New York.

16.    During the time that Defendant was managing the show on behalf of Plaintiff, the show was promoted, in the most recent years, as the "Northeast Regional Autobody/Automotive Trade Show." A true copy of the promotional literature for the 2008 show is attached hereto as Exhibit 2.

17.    As set forth in Exhibit 2, Defendants acknowledge that the show was the 31st Annual AASP/NJ NORTHEAST 2008 Regional Autobody/Automotive Trade Show.

18.    During the time that Defendants managed the AASP/NJ Annual Trade Show, Plaintiff paid all of the advertising expenses for promoting the Northeast shows. Thus, the good will associated with the mark NORTHEAST accrues to Plaintiff.

19.    Although the AASP/NJ Annual Trade Show continued to grow initially, the growth of the show declined in the last several years.

20.    Consequently, Plaintiff began to investigate options for restoring growth to Plaintiff's show.

21.    Plaintiff provided Defendant an opportunity to present an alternative marketing plan to reignite the growth of Plaintiff's show. However, Defendant failed to provide a plan acceptable to Plaintiff.

22.    Plaintiff decided to move its annual show back to the New Jersey Meadowlands and terminated the management agreement with Defendant.

23.     Plaintiff publicly announced that it would hold its "Northeast 2009 Trade Show" on March 20, 21 and 22, 2009 at the Meadowlands Exposition Center.

### DEFENDANT'S DECEPTIVE MARKETING SCHEME

24.     After Plaintiff communicated to Defendant that it was terminating the management agreement with Defendants, Defendant David McCarey, III indicated to Plaintiff his intention to sponsor a competing trade show that would be scheduled for the same time as Plaintiff's 2009 Northeast Trade Show.

25.     After Plaintiff's public announcement of its "Northeast 2009 Trade Show," Defendant announced it would hold a "20th Northeast Regional 2009 Trade Show" on the very same days, i.e., March 20, 21 and 22, 2009. Further, Defendants announced that Defendants' renegade show would be held at the same site as Plaintiff's previous shows, i.e. the Rockland Community College Field House in Suffern, New York. Defendants' renegade show is being promoted as an exhibition of "Equipment, Supplies and Related Services for the Collision and Automotive Service Industry." A true copy of a promotional flyer for Defendant's show is attached hereto as Exhibit 3.

26.     Defendants began soliciting the exhibitors and attendees of the shows it previously managed for Plaintiff. Thus, Defendant is using Plaintiff's confidential business information concerning the attendees at Plaintiff's prior shows to promote its competing trade show.

27.     Defendants continue to maintain advertisements on its website for Plaintiff's NORTHEAST 2008 show which is identified by Defendant therein as the "31st Annual AASP/NJ Trade Show."

28.   Despite the acknowledgement on its own website that the 2008 show was, in fact, AASP/NJ's 31st annual trade show, Defendant now advertises its renegade 2009 show as its 20th annual event.  To further confuse the public, Defendants even list the exhibitors who attended Plaintiff's 2008 show in the promotion of Defendants' renegade 2009 show.

29.   Plaintiff has been contacted by several exhibitors/attendees of its 2008 Northeast Show because they believed Defendants' renegade 2009 Show was, in fact, sponsored by Plaintiff.  Thus, Defendants' deceptive marketing practices are causing actual confusion in the marketplace.

30.   Despite the fact that Plaintiff paid the advertising expenses for its prior Northeast shows, Defendants have recently claimed that they are entitled to exclusively use the mark NORTHEAST in connection with automotive trade shows.  However, the most recent management contract between Plaintiff and Defendants makes no mention of Defendants' claim to NORTHEAST.  In fact, Defendants never made such a claim prior to the termination of the management agreement by Plaintiff.

31.   The fact that Defendants merely managed the shows for Plaintiff is further confirmed by the Exhibitor's Contract for the 2008 Northeast Show.  The exhibitors for that show contracted directly with Plaintiff and made payments directly to Plaintiff.  Defendants signed the contracts as manager of the show for Plaintiff.  A true copy of one such exhibitor contract is attached hereto as Exhibit 4.

32.   Defendants' willful actions including, but not limited to, deceptive trade practices, unfair competition and trademark infringement have caused and, unless enjoined by the Court, will continue to cause irreparable injury and financial harm to Plaintiff.

- 6 -

## COUNT I

## FALSE DESIGNATION OF ORIGIN

33.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 32 hereof with the same force and affect as if set forth herein at length.

34.     Defendants' unauthorized and willful use of Plaintiff's common law trademark "Northeast" in promoting its renegade 20TH NORTHEAST REGIONAL 2009 TRADE SHOW tends to falsely represent that Defendants are connected with or that Defendants' activities are authorized by Plaintiff and is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' services by Plaintiff.  Any failure of Defendants to maintain acceptable standards of quality and service will reflect adversely on Plaintiff and cause irreparable harm to Plaintiff.

35.     Plaintiff has no control over the quality of the services provided by Defendants, and because of the confusion as to the source engendered by Defendants, Plaintiff's valuable good will in respect of its trademark is at the mercy of Defendants.

36.     Said actions of Defendants constitute a violation of 15 U.S.C. § 1125(a) in that such false designations and representations of origin and quality have been and continue to be used in connection with the services offered by Defendants and which affect commerce.

37.     Defendants' false designation of origin and quality has caused substantial and irreparable damage and injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

## COUNT II

## DILUTION

38.    Plaintiff repeats and realleges the allegations of Paragraphs 1 through 37 hereof with the same force and affect as if set forth herein at length.

39.    Defendants' actions constitute a violation of 15 U.S.C. § 1125(c) in that such use of "Northeast" in connection with Defendants' renegade 20TH NORTHEAST REGIONAL 2009 TRADE SHOW has caused and will continue to cause dilution of the distinctive quality of Plaintiff's mark NORTHEAST in connection with Plaintiff's trade show.

## COUNT III

## COMMON LAW UNFAIR COMPETITION

40.    This count arises under the New Jersey common law of Unfair Competition. Jurisdiction is supplemental to Count I pursuant to U.S.C. § 1367. Venue is proper in this district under 28 U.S.C. § 1391.

41.    Plaintiff repeats and realleges the allegations of Paragraphs 1 through 40 hereof with the same force and affect as if set forth herein at length.

42.    By Defendants' unauthorized and willful use of "Northeast" in connection with its renegade 20TH NORTHEAST REGIONAL 2009 TRADE SHOW, Defendants are guilty of unfair competition in violation of the New Jersey Common Law of Unfair Competition and is likely to cause confusion, mistake or to deceive the public.

43.    Defendants' unlawful conduct will continue to damage and cause irreparable injury to Plaintiff unless enjoined by this court. Plaintiff has no adequate remedy at law.

## COUNT IV

## NEW JERSEY STATUTORY UNFAIR COMPETITION

44.    Plaintiff repeats and realleges the allegations of Paragraphs 1 through 43 hereof with the same force and affect as if set forth herein at length.

45.    Defendants' unauthorized and willful use of "Northeast" in connection with its renegade 20TH NORTHEAST REGIONAL 2009 TRADE SHOW in connection with its offering and marketing of services constitutes appropriation of Plaintiff's trademark, reputation and good will in direct violation of the New Jersey Unfair Competition Act, N.J.S.A. § 56:4-1.

46.    The activities of Defendants alleged herein have caused and, if not enjoined, will continue to cause, irreparable harm to the rights of Plaintiff. Plaintiff has no adequate remedy at law.

## COUNT V

## NEW JERSEY TRADEMARK ACT

47.    Plaintiff repeats and realleges the allegations of Paragraphs 1 through 46 hereof with the same force and affect as if set forth herein at length.

48.    Defendants' unauthorized and willful use of "Northeast" in connection with its renegade 20TH NORTHEAST REGIONAL 2009 TRADE SHOW in connection with its offering and marketing of services constitutes appropriation of Plaintiff's trademark, in direct violation of the New Jersey Trademark Act, N.J.S.A. § 56:3-13.16.

49.    The activities of Defendants alleged herein have caused and, if not enjoined, will continue to cause, irreparable harm to the rights of Plaintiff. Plaintiff has no adequate remedy at law.

## COUNT VI

## TORTIOUS INTERFERENCE

50.    Plaintiff repeats and realleges the allegations of Paragraphs 1 through 49 hereof with the same force and affect as if set forth herein at length.

51.    Defendants have willfully, intentionally and maliciously interfered with Plaintiff's prospective economic advantage by contacting exhibitors and attendees of Plaintiff's prior shows and induced and continues to induce those exhibitors and attendees to contract with Defendants rather than Plaintiff for the 2009 Northeast trade show.

52.    Defendants have done this by *inter alia* intentionally deceiving the public into believing its 2009 Trade Show is a continuation of Plaintiff's NORTHEAST Trade Show that Defendants previously managed for Plaintiff.

53.    Plaintiff has been damaged by Defendant's willful and malicious actions as alleged herein.

## COUNT VII

## MISAPPROPRIATION OF CONFIDENTIAL BUSINESS INFORMATION

54.    Plaintiff repeats and realleges the allegations of Paragraphs 1 through 53 hereof with the same force and affect as if set forth herein at length.

55.    Pursuant to the contract between the parties, Defendants agreed that Plaintiff's membership list remained its property.

56.    Defendants are using Plaintiff's confidential membership lists to advertise and promote its renegade 2009 show.

06/27/08 13:59 FAX 732 761 1611 MANDEL & PESLAK Case 7:08-cv-07069-KMK Document 1-19 Filed 08/08/2008 Page 11 of 17 ☐015

Case 3:08-cv-03186-MLC-JJH Document 1 Filed 06/26/2008 Page 11 of 14

57. Defendants are using confidential statistical information concerning the attendees at Plaintiff's prior shows to induce exhibitors to sign up for Defendants' renegade 2009 show rather than for Plaintiff's 2009 show.

58. Plaintiff has been irreparably injured and financial damaged by Defendants' misappropriation of its proprietary and confidential information.

## COUNT VIII

## ACCOUNTING

59. Plaintiff repeats and realleges the allegations of Paragraphs 1 through 58 hereof with the same force and affect as if set forth herein at length.

60. Defendants' responsibilities for the prior trade show included *inter alia* managing the finances of the show and reconciling the amounts due to Plaintiff.

61. Given Defendant's deception, Plaintiff demands an audit to verify Defendant's prior accounting.

62. Plaintiff demands an accounting from Defendants to reconcile all accounts from prior shows.

WHEREFORE, Plaintiff prays for judgment that:

(a) Defendants have, by their unauthorized use of a mark confusingly similar to Plaintiff's common-law trademark, infringed the common-law trademark, used and applied false designations of origin, diluted the distinctive quality of Plaintiff's trademark, competed unfairly with Plaintiff and have injured Plaintiff's good will and business reputation, in violation of Federal and State Law and has done so willfully all to the detriment of Plaintiff.

(b)     Defendants, their agents, servants, employees, successors and assigns and all persons in active concert, privity, or participation with Defendants, be preliminarily and permanently enjoined from infringing upon the Plaintiff's common-law trademark, from using any false designation or false description or representation, from engaging in any act or series of acts which either alone or in combination constitutes deceptive or unfair methods of competition by Defendants with Plaintiff and from otherwise interfering with or injuring the business reputation of Plaintiff, or diluting the distinctive quality of the Plaintiff's trademark or the good will associated therewith.

(c)     Defendants be required to account for and pay over to Plaintiff, Defendants' profits and any damages suffered by Plaintiff as a result of Defendants' acts of trademark infringement, false designation of origin, false advertising and unfair competition, together with interest and costs.

(d)     Defendants be required to pay to Plaintiff an amount three times the profits of Defendants or damages of Plaintiff.

(e)     Defendants be required to pay an award of statutory damages to Plaintiff.

(f)     Defendants be required to cease all use of the mark 20TH NORTHEAST REGIONAL 2009 TRADE SHOW, or any mark confusingly similar to Plaintiff's common-law trademark.

(g)     Defendants be required to contact all persons who have responded to its solicitation for their renegade 20th Northeast Regional Trade Show and inform them that its trade show is not sponsored by Plaintiff and refer all such persons to Plaintiff.

(h)   Defendants be required to provide to Plaintiff a list of all persons who contacted Defendants in response to its solicitation for its renegade 2009 show.

(i)   Defendants be required to refund any deposits it has already received from exhibitors who were mislead by its deceptive marketing.

(j)   Defendants be ordered to surrender for destruction all promotional materials, signs, labels, advertisements and other materials constituting infringement of Plaintiff's trademark.

(k)   Defendants be deemed to have misappropriated Plaintiff's confidential business information and tortiously interfered with Plaintiff's prospective economic advantage and be required to pay all common law damages and punitive damages to Plaintiff for such tortious interference and misappropriation of Plaintiff's confidential business information.

(l)   Defendants be required to pay Plaintiff the costs of this action, together with reasonable attorney's fees, costs and disbursements.

(m)   Defendants be required to account for all monies received and disbursed for the trade shows it managed for Plaintiff.

(n)   Plaintiff be awarded such other and further relief, as this Court deems just and equitable.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands trial by jury on all issues so triable in this matter.



Opening Ceremonies of the
1985 Northeast Autobody Congress and Trade Show

**EXHIBIT 2**

Announcing the 31st Annual

## AASP/NJ



ADMIT ONE

**NORTHEAST 2008**

The Northeast Region's Largest Event
for the
Collision and Mechanical Repair Professional

*Northeast 2008 Regional*
*Autobody/Automotive Trade Show*
*March 28, 29, 30, 2008*

Rockland Community College Arena • Suffern, New York

Show Information  Rockland Exposition, Inc.  David McCarey III.  845-343-2772  800-223-4548

**EXHIBIT 3**



**Attorneys at Law**
*80 Scenic Drive   Suite 5  Freehold, New Jersey 07728*
**732-761-1610        fax: 732-761-1611**
www.mandelpeslak.com

| Lawrence D. Mandel | | Arthur M. Peslak |
|---|---|---|
| *NJ • NY • PA Bars* | | *NJ • NY Bars* |

June 27, 2008

**Via Facsimile and First Class Mail**
Philip Furgang, Esq.
Furgang & Adwar, L.L.P.
1325 Avenue of the Americas, 28th Floor
New York, New York  10019

   Re: Association of Automotive Service Providers of New Jersey
      v. Rockland Exposition, Inc.
      Our File No.:  AASP-001

Dear Mr. Furgang:

   I have now gathered the appropriate facts from my client.  I am now in a position to respond to the claims of your client set forth in your letter of June 9, 2008.

   First, your client was hired by my client to manage my client's annual Northeast trade shows beginning in 1990.  Even now, your client maintains a brochure for the 2008 show on its website.  The brochure is entitled "Announcing the 31st Annual AASP/NJ . . . Northeast 2008 Regional Autobody/Automotive Trade Show."  The last page of that brochure states the show is "Managed for AASP/NJ by Rockland Exposition, Inc."  I refer you to http://rocklandexpo.com/pdf/northeast2008brochure.pdf.

   Second, my client and their predecessors in interest began using the mark "Northeast" in connection with their annual show in 1985.  As you know, your client did not begin to manage the AASP/NJ show until 1990.

   Third, during the time that your client managed my client's show, my client paid for all the advertising expenses to promote the "Northeast" trade show.  Thus, any goodwill associated with the show and the mark accrues to my client.  Your client's claim that he used Northeast for 35 years is belied by his own website where he states that he has been in business since 1983 not 1973.

   Fourth, your client is now engaged in a deceptive marketing campaign to direct exhibitors from my client's 2009 show to his 2009 show.  For example, your client now calls his show the "20th Annual" although the 2008 show appears on his website as the "31st Annual AASP/NJ Show."  He maintains a list of exhibitors at my client's 2008 show in the area of his website

Philip Furgang, Esq.
Page 2
June 27, 2008

where he promotes his 2009 show. Obviously he is using my client's name and goodwill to divert business.

Fifth, several exhibitors from the 2008 show have come to my client after being contacted by your client regarding his 2009 show. These exhibitors indicated they thought your client's advertisements related to the 2009 AASP/NJ show. Thus, we have evidence of actual confusion.

As a result of our investigation and the, at best, disingenuous representations made by your clients, we have filed a lawsuit today against your clients in the United States District Court for the District of New Jersey. I enclose a copy of the filed Complaint. Our intention is to seek a preliminary injunction against your client unless your client agrees as follows:

1.  Cease and desist from his use of "20th Annual Northeast" in connection with his 2009 trade show;

2.  Reschedule the trade show for a date that does not conflict with my client's trade show;

3.  Provide us with a list of all persons your client has communicated with in connection with his 2009 trade show;

4.  Place a prominent disclaimer on any advertising for his 2009 trade show, including his website, that the 2009 show is not sponsored by or affiliated with AASP/NJ in any way;

5.  Provide a refund of any deposit to anyone who signed up as an exhibitor for his 2009 trade show if requested;

6.  Delete all references to my client, my client's prior shows and any statistical analysis of prior attendees or exhibitors from your client's website or any other advertisements; and

7.  Return all exhibitor and attendee lists from prior AASP/NJ shows to my client.

If we do not have agreement from your client to resolve this matter by July 7, 2008, we will attend to filing a preliminary injunction motion. Please advise whether you are authorized the accept service of the Complaint and Summons on behalf of your clients.

Philip Furgang, Esq.
Page 3
June 27, 2008


     This letter is written for settlement purposes, is inadmissible in evidence, and without prejudice to my client's rights, which are all specifically reserved.

Sincerely,

Arthur M. Peslak

AMP/nbw

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number:**

## VA 1-635-656

**Effective date of registration:**

**July 2, 2008**

## Title

| | |
|---|---|
| **Title of Work:** | AUTOMOTIVE CONGRESS & TRADE SHOW 1990 |
| **Nature of Work:** | TEXT AND GRAPHICS |

## Completion/Publication

| | |
|---|---|
| **Year of Completion:** | 1989 |
| **Date of 1st Publication:** | May 15, 1989 |

## Author

| | |
|---|---|
| ■ **Author:** | ROCKLAND EXPOSITION, INC. |
| **Author Created:** | 2-Dimensional artwork, Map, Photograph, Technical Drawing, Text |
| **Work made for hire:** | Yes |
| **Domiciled in:** | United States |
| **Anonymous:** | No |
| **Pseudonymous:** | No |

## Copyright claimant

| | |
|---|---|
| **Copyright Claimant:** | Rockland Exposition, Inc |
| | 388 East Main Street, Middletown, NY 10940 |

## Limitation of copyright claim

| | |
|---|---|
| **Previously registered:** | No |

## Certification

| | |
|---|---|
| **Name:** | Stephanie F Adwar, authorized agent of Rockland Exposition, Inc |
| **Date:** | July 1, 2008 |

| | |
|---|---|
| **Correspondence:** | Yes |

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code,* attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number:**

## VA 1-635-638

**Effective date of registration:**

**July 2, 2008**

## Title

| | |
|---|---|
| **Title of Work:** | NORTHEAST 97 REGIONAL |
| **Nature of Work:** | TEXT AND GRAPHICS |

## Completion/Publication

| | |
|---|---|
| **Year of Completion:** | 1996 |
| **Date of 1st Publication:** | April 15, 1996 |

## Author

| | |
|---|---|
| **Author:** | ROCKLAND EXPOSITION, INC |
| **Author Created:** | 2-Dimensional artwork, Photograph, Technical drawing, Text |
| **Work made for hire:** | Yes |
| **Domiciled in:** | United States |
| **Anonymous:** | No | **Pseudonymous:** No |

## Copyright claimant

| | |
|---|---|
| **Copyright Claimant:** | Rockland Exposition, Inc. |
| | 388 East Main Street, Middletown, NY 10940 |

## Limitation of copyright claim

| | |
|---|---|
| **Previously registered:** | No |

## Certification

| | |
|---|---|
| **Name:** | Stephanie F. Adwar, authorized agent of Rockland Exposition, Inc |
| **Date:** | July 1, 2008 |